175 So. 678

**STATE v. BOARD OF COM'RS OF CADDO LEVEE DIST.**

No. 34224.

May 24, 1937.

Rehearing Denied June 21, 1937.

Gaston L. Porterie, Atty. Gen., and W. W. Thompson and George M. Wallace, Sp. Asst's. to the Atty. Gen., for the State.

Tucker & Mason, of Shreveport, for appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, amici curiæ in support of application for rehearing.

ROGERS, Justice.

This suit involves a controversy between the State of Louisiana and the Board of Commissioners of the Caddo Levee District over the ownership of the bed of the nonnavigable portion of Black bayou, lying in township 23 north, range 16 west, parish of Caddo. On November 12, 1917, the state auditor and the register of the state land office, purporting to act under provisions of Act No. 74 of 1892, as amended by Act No. 160 of 1900, certified and transferred the land in dispute to the defendant levee board.

The State alleges that it acquired the property by virtue of the Swamp Land Grants of Congress, and that the title thereto is still in the State, notwithstanding the certification and transfer thereof to the defendant levee board. That the defendant levee board has no legal title to the bed of Black bayou, for the reason that, it being a bayou with a bed or bottom covered with water at the time of the certification and transfer, November 12, 1917, and now, the title thereto is vest-

ed in the State. That prior to the date of the certification by the State to the board, so far as concerned the bed of Black bayou, the Legislature by Act No. 258 of 1910 declared the title to the bed of bayou to be in the State and, consequently, the certificate issued on November 12, 1917, which was subsequent to the passage of the statute, could not and did not transfer to the levee board any title to the bed of the bayou, the statute, in effect, prohibiting the transfer.

The defendant levee board filed an exception of no cause or right of action, based on the proposition that the Legislature by virtue of the statutes creating the levee board, having vested in the board title to all the lands embraced within the levee district, did not intend by the adoption of Act No. 258 of 1910 to withdraw from the grant so made the particular bayou bed in dispute. The court below sustained the exception and dismissed the suit. Plaintiff has appealed from the judgment.

The State concedes that the grant to the defendant levee board embraced the bed of the nonnavigable portion of Black bayou, which traverses a portion of the lands included in the grant. But the State contends that the Legislature by the adoption of Act No. 258 of 1910 revoked the grant so far as it affected the bed of the bayou, thereby prohibiting its subsequent transfer to the levee board. On the other hand, the levee board concedes that the State had the right to revoke the grant to the board of the bed of Black bayou, subject to the rights previously acquired by third persons dealing with the grantee. But the levee board contends that Act No. 258 of 1910 by its own terms did not affect the prior grant to the board, thereby permitting the subsequent transfer of the bed of the bayou to the grantee.

Therefore, the short question presented for decision is whether Act No. 258 of 1910 repealed expressly or by necessary implication the grant embraced in Act No. 74 of 1892 and Act No. 160 of 1900, so far as it affected the bed of Black bayou?

Act No. 258 of 1910 is composed of two sections. The second section refers only to the waters and beds of navigable streams; hence it is not pertinent to the issue involved in this case. The first section declares: "That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm, or corporation are hereby declared to be the property of the State. There shall never be any charge assessed against any person, firm or corporation for the use of the waters of the State for municipal, agricultural or domestic purposes." That section plainly refers to nonnavigable bodies of water as well as navigable bodies of water and is the statutory provision on which plaintiff's suit is predicated.

The clause in the first section of Act No. 258 of 1910, excepting from its provisions the waters and beds of bayous, lagoons, lakes, and bays under the direct ownership of any person, firm, or corporation, clearly refers to private owners

of such lands and not to the several levee boards, which are merely state agencies, whose rights, privileges, and obligations are at all times under legislative control. Moreover, the defendant levee board was not the direct owner of the land in dispute at the time of the adoption of Act No. 258 of 1910. The only right it possessed, if any, was the right to request the state auditor and the register of the state land office to execute an instrument conveying the land and to record the instrument in the conveyance records of Caddo parish.

■ It is settled now, and beyond dispute, that the grants made to the several levee boards of the State are not grants in praesenti. They are merely grants of the right to acquire the lands by conveyance from the proper state officers. Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, and the authorities therein cited. One of the cases cited is State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891, wherein this court in interpreting Act No. 74 of 1892 and Act No. 160 of 1900, the statutes organizing the defendant levee board, held that: "The grant of lands made by the state to the Board of Commissioners of the Caddo levee district is not a grant in praesenti, but is intended to vest in the grantee a disposable title only when proper instruments of conveyance, executed by the State Auditor and Register of the State Land Office, are recorded in the parishes where the lands lie. * * *"

The defendant levee board, while conceding that under the settled jurisprudence the grant made by Act No. 74 of 1892 and Act No. 160 of 1900 was not a grant in praesenti, and could not vest an absolute title in the board until proper instruments of conveyance were executed and recorded, nevertheless contends that as a result of the statutory provisions it was invested with such a title to the lands in dispute as could not be withdrawn or infringed upon, except by direct, specific legislative action.

It is argued on behalf of the levee board that Act No. 258 of 1910 does not purport to transfer the title to the beds of any waters—navigable or nonnavigable—but merely proclaims the indisputable fact that all of them that do not belong to any person, firm, or corporation are the property of the State.

If it be a fact, that, independently of the provisions of Act No. 258 of 1910, all beds of navigable or nonnavigable waters not belonging to any person, firm, or corporation, are the property of the State, then, obviously, the state auditor and the register of the state land office could not legally convey the State's property to the defendant levee board.

But, according to the further argument made on behalf of the levee board, it is not an indisputable fact that the beds of all bodies of water within the State are the property of the State. On the contrary, the State's ownership of such lands is vigorously disputed. The argument is founded on the right of the levee board to obtain and record proper instruments of conveyance, as provided by the statute creating the levee district. It is argued

that the right is an absolute and exclusive right, which cannot be denied, and when exercised vests in the levee board complete title to the property conveyed.

The arguments are not consistent. If the State is the absolute owner of the property, then, manifestly, the levee board has no right therein which it is incumbent upon the State to recognize. On the other hand, if the right of the levee board to demand title is so absolute that it cannot be disregarded, then, manifestly, the levee board, not the State, controls the property and is its owner, to all intents and purposes.

In support of the contention that the statute creating the defendant levee board vested in the board a right to the property in dispute which could only be revoked by direct and specific legislative action, and that the provisions of Act No. 258 of 1910 do not constitute such action, counsel for the levee board cite the cases of Ellerbe v. Grace, 162 La. 846, 111 So. 185 and Board of Commissioners v. Hardtner, 164 La. 632, 114 So. 494.

Taking up first the Hardtner Case, we find that the beds of streams traversing lands granted to a levee board were not in dispute. Hence, Act No. 258 of 1910 was not only not discussed, but also it was not even mentioned in the decision. The contention in that case was that the Act No. 30 of Extra Session of 1915 and Act No. 230 of 1918 had the effect of withdrawing from the levee board grant the title to certain mineral and timber rights. A reference to the statutes involved will disclose that in neither instance did the Legislature by direct and specific action

declare that the mineral and timber rights in dispute belonged to the State. The statutes merely authorized the Governor to lease for mineral exploitation any lands belonging to the State, and the sheriffs, under direction of the register of the state land office, to sell any timber standing on similar lands. The court merely held, by a divided court, that neither of the disputed statutes contained language strong or explicit enough to bring them within the construction contended for by the State, namely, that the effect of their adoption was to withdraw from the grant to the levee board the timber and minerals on the lands within the levee district. In the Hardtner Case, the statutes involved only provided that certain things could be done by certain persons with lands already belonging to the State. In the present case the statute involved specifically declares that certain property, not theretofore claimed by the State, should from its adoption be deemed to be the property of the State.

Taking up next the Ellerbe Case, we find that what was decided in that case is that lands once covered by the waters of Cross Lake, a navigable body of water at the time Louisiana was admitted into the Union, which became the property of the State by virtue of its sovereignty when in course of time the lake dried up and the lake bed became fit for human habitation, were included in the grant to the Caddo levee board under the peculiar wording of Act No. 74 of 1892 and Act No. 160 of 1900, creating the levee district. And that, as a consequence, such lands,

after the adoption of the statutes, were not subject to the general land laws. Obviously, the decision in that case is not authority for the levee board's position in this case.

Defendant contends that Act No. 258 of 1910 is a general law which does not expressly or impliedly repeal Act No. 74 of 1892 and Act No. 160 of 1900, which defendant asserts are special laws. Defendant's contention was upheld by the trial judge.

If Act No. 258 of 1910 repealed Act No. 74 of 1892 and Act No. 160 of 1900, so as to withdraw the bed of Black bayou from the grants to the levee board under those acts, the repeal was by necessary implication, for Act No. 258 of 1910 does not contain a repealing clause.

Article 23 of the Civil Code provides that the repeal of a law may be implied as well as express. The repeal "is implied, when the new law contains provisions contrary to, or irreconcilable with those of the former law."

A special legislative act may be impliedly repealed by a general legislative act; and the question whether it has been so repealed is always one of legislative intention. Such intention is clearly manifested whenever the two acts are irreconcilably inconsistent or repugnant. 59 C.J., § 531, p. 931.

And where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, will, although it contains no repealing clause, govern, control, or prevail, so as to supersede and impliedly repeal the earlier act to the extent of the repugnancy. 59 C.J., § 514, p. 910.

Tested by these rules of statutory construction, we are of opinion that the grant to the defendant levee board by Act No. 74 of 1892 and Act No. 160 of 1900, so far as it embraced the waters and beds of nonnavigable as well as navigable waters, was repealed by the adoption of Act No. 258 of 1910.

Act No. 258 of 1910 covers the whole subject matter of the waters and beds of bayous, lagoons, lakes, bays, and rivers, the ownership of which had not theretofore been transferred or conveyed in the manner required by law. That act is wholly inconsistent and in irreconcilable conflict with the acts creating the defendant levee board upon the subject of the ownership of the waters and beds of bayous, lagoons, lakes, and rivers, there being no bays in that particular levee district, where there had been no transfer of ownership by the State at the date of the adoption of Act No. 258 of 1910.

Act No. 258 of 1910 by its terms clearly manifests the legislative intention to establish a uniform and mandatory rule or system as to the ownership of the waters and beds of the bayous, lagoons, lakes, rivers, and bays within the State, where they were not under the direct ownership of any private person, firm, or corporation, and where they had not been previously transferred by the State. Excluding the lands subject to private ownership and the lands previously transferred by the State, there

were left only those the ownership of which was of necessity in the State, as to which no declaration by the Legislature was necessary, and those granted, but not actually transferred, to the several levee boards, as to which a legislative declaration was necessary to put back the title in the State.

As we have hereinabove stated there is an irreconcilable conflict between Act No. 258 of 1910, which declares the State to be the owner of the waters and beds of and in all bayous, lagoons, lakes, rivers, and bays, except those under direct private ownership and those transferred as directed by law to a levee board, and the earlier Act No. 74 of 1892 and Act No. 160 of 1900, which granted to the defendant levee board lands "now belonging or that may hereafter belong to the State of Louisiana." Clearly, there cannot be an ownership in the levee board, where no transfer had been made prior to the adoption of Act No. 258 of 1910, and an ownership in the State, as provided by the act, at one and the same time.

When the Legislature by Act No. 258 of 1910 declared that the State owned the waters and beds of such streams as Black bayou, and, so far as concerns the defendant levee board, excepted from its provisions only those waters and beds where the lands they traverse had been transferred by the State, it intended unequivocally to retake title to the beds of Black bayou and similar streams, where they had not been conveyed to the several levee boards, and where the rights of third parties had not intervened. Any other construction would stamp Act No. 258 of 1910 as without meaning and as useless legislation.

For the reasons assigned, the judgment appealed from is annulled; the exception of no cause or right of action is overruled; and the case is remanded to the district court for further proceedings consistent with the views herein expressed; costs of this proceeding to be paid by the defendant; all other costs to await the final disposition of the suit.

LAND and ODOM, JJ., dissent.

O'NIELL, C. J., dissents and hands down reasons.

O'NIELL, Chief Justice (dissenting).

With due respect for the prevailing opinion in this case, I must say that I do not find anything in either the title or the text of Act No. 258 of 1910 that seems to me to revoke or repeal, to any extent, the land grants which the Legislature had made to the several levee districts throughout the State by the special acts creating the levee districts. The title of the act of 1910 is not indicative of any such object, as to revoke or repeal these land grants, to the extent of withdrawing the lands forming the beds of the nonnavigable waters in the levee districts throughout the State, and thus to leave the lands which remain as the property of the levee districts striped and spotted with misshapen areas of State lands, under the shallow, nonnavigable streams and bodies of water.

For convenience I quote now the title of the act of 1910, viz.:

"An Act To declare the waters found in the bayous, lagoons, lakes, bays, and rivers of the State to be the property of the State, and the beds thereof."

This phrase, "and the beds thereof," tacked on at the end of the title of the act, must be read as if it were inserted in its proper place in the title—as it is in the body—of the act. But that is not important. The important fact is that there is not in the title of the act any indication of any such object or purpose as that which is attributed to the statute in the prevailing opinion in this case. If it were said in the body of this act that all of the special laws creating the several levee districts throughout the State were thereby repealed, to the extent to which it is so said in the prevailing opinion in this case, the statute would be violative of section 16 of article 3 of the Constitution, which requires that the title of every statute shall be indicative of its object.

There are only two sections, and there is no repealing clause, in the act of 1910. The second section, by its terms, is applicable only to navigable bodies of water. For convenience, I quote now the whole act, the first section of which, in the prevailing opinion here, is said to have revoked or repealed the land grants that were made to the several levee districts throughout the State, so far as the beds of the nonnavigable bodies of water are concerned, viz.:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm, or corporation are hereby declared to be the property of the State. There shall never be any charge assessed against any person, firm or corporation for the use of the waters of the State for municipal, agricultural or domestic purposes.

"Section 2. Be it further enacted, etc., That while acknowledging the absolute supremacy of the Federal Government over the navigation on and in the navigable waters within the borders of the State, yet nevertheless it is hereby declared and affirmed that the ownership of the water itself and the beds thereof in said navigable streams is vested in the State and that the State has the right to enter into possession of said waters when not interfering with the control of navigation exercised by the Federal Government thereon, provided this Act is not intended to interfere with the acquisition in good faith of any waters or the beds thereof transferred by the State or its agencies prior to the passage of this Act; provided further this Act shall not effect [probably meaning affect] the acquisition of property by alluvion or accretion."

I do not believe that, by the simple declaration, "That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm, or corporation are hereby declared to be the property of the State," the Legislature intended to say

that the title to the beds of the nonnavigable bodies of water in the levee districts thereafter would be deemed excluded from any instrument of conveyance that a levee board might demand and obtain, for lands embracing a nonnavigable body of water.

We must bear in mind that the grants to the levee districts were not grants in praesenti. Hence the beds of all nonnavigable bodies of water, embraced within the lands which were said to be granted to the levee boards, but which had not yet been formally transferred by an instrument of conveyance, at the time when Act No. 258 of 1910 was enacted, did belong to the State. No one disputes that. Hence I do not see how the mere declaration of that fact, by the Legislature, could have the tremendous effect that is attributed to it in the prevailing opinion in this case.

It is said that the expression in Act No. 258 of 1910, "not at present under the direct ownership of any person, firm, or corporation," (section 1) clearly refers only to individuals, partnerships and private corporations, not public or political corporations, such as levee districts. That would mean that the Legislature intended to declare that the beds of all nonnavigable bodies of water in the State, including any such beds that might belong to any public or political corporation, but not those belonging to individuals, firms or private corporations, were the property of the State. The wording of the statute does not impress me that way. But that loses its importance when we remember that the beds of the nonnavigable bodies of water embraced within the tracts of

land which were included in the grants to the levee boards remained the property of the State until the levee boards obtained instruments of conveyance. If the Legislature had intended that the act of 1910 should take away from the levee boards the right to obtain such instruments of conveyance, so far as the beds of the nonnavigable bodies of water were concerned, it would have been an easy matter for the Legislature to say so.

It is said in the prevailing opinion in this case:

"If it be a fact, that, independently of the provisions of Act No. 258 of 1910, all beds of navigable or nonnavigable waters not belonging to any person, firm, or corporation, are the property of the State, then, obviously, the state auditor and the register of the state land office could not legally convey the State's property to the defendant levee board."

The answer to that, as far as the beds of nonnavigable bodies of water are concerned, is in the ninth section of the statute creating the Caddo Levee District, Act No. 74 of 1892, and in the corresponding section of every statute creating a levee district, viz.:

"It shall be the duty of the Auditor and [the] Register of the State Land Office on behalf and in the name of the State to convey to the said Board of Levee Commissioners by proper instruments of conveyance, all lands hereby granted or intended to be granted and conveyed to the said Board whenever from time to time the said Auditor or Register of the State Land Office or either of them shall be requested to do

so by the said Board of Levee Commissioners or by the President thereof, and thereafter the said President of the said Board shall cause the said conveyances to be properly recorded in the Recorder's office of the respective parishes wherein the said lands are located and when the said conveyances are so recorded the title to the said lands with the possession thereof shall from thenceforth vest absolutely in the said Board of Commissioners, its successors or grantees."

It is said that it is inconsistent for the levee board to argue that the lands which are embraced in the grant to the levee board remain the property of the State until the board of commissioners demands and obtains an instrument of conveyance from the state auditor and the register of the state land office, and at the same time to argue that the right of the board of commissioners to obtain such an instrument is absolute. I refer to the fourth page of the opinion, where it is said:

"The arguments are not consistent. If the State is the absolute owner of the property, then, manifestly, the levee board has no right therein which it is incumbent upon the State to recognize. On the other hand, if the right of the levee board to demand title is so absolute that it cannot be disregarded, then, manifestly, the levee board, not the State, controls the property and is its owner, to all intents and purposes."

There is nothing inconsistent in the levee board's argument. The board says, as this court has said many times, that after the lands were granted by the State to the levee boards the title remained in the State until the board of commissioners, or the president of the board, demanded, from time to time, instruments of conveyance, in order to put on record the title for any particular tract of land. But the State's title to the land which was donated was not "absolute," after the donation was made, because it was then the mandatory duty of two of the State's administrative officers, the auditor and the register of the state land office, to sign "proper instruments of conveyance" for "all lands hereby granted or intended to be granted and conveyed to the said board," etc.

It is said, on the same page of the prevailing opinion, referring to the argument of counsel for the levee board, viz.: "It is argued that the right is an absolute and exclusive right, which cannot be denied, and when exercised vests in the levee board complete title to the property."

Yes, according to the precise words of the grant, the right of the board of commissioners to demand and obtain an instrument of conveyance for any and all of "the lands hereby granted or intended to be granted and conveyed to said board" is an absolute and exclusive right, as long as the grant remains unrepealed and unrevoked. Of course, the Legislature may revoke any or all of the levee board grants, in whole or in part, at any time, as to any land that a levee board has not already disposed of. But the administrative officers of the State, and particularly the state auditor and the register of the state land office, must recognize the absolute right of the boards of commissioners, as long as these rights are not revoked by the Legislature.

In the prevailing opinion in this case an effort is made to reconcile the decision which is being rendered in this case with the law which controlled the decision that was rendered in Board of Commissioners v. Hardtner, 164 La. 632, 114 So. 494, 499, and the decision that was rendered in Ellerbe v. Grace, 162 La. 846, 111 So. 185. It is not possible to reconcile the decision that is being rendered now with the law which controlled the decisions in the cases referred to, and which controlled every other decision that this court has ever rendered on the subject. In the Hardtner Case it was held that the right of the board of commissioners to demand an instrument of conveyance which would convey a fee-simple title to any of the State's land within the district, including the mineral rights in the land, was not repealed or affected by Act No. 30 of the Extra Session of 1915, authorizing the Governor to grant mineral leases on any of the State's lands, including the beds of rivers and other bodies of water; and that the right of the board of commissioners in that respect was not repealed or affected by Act No. 230 of 1918, authorizing the sale of the timber on the State's lands, under the direction of the Register of the State Land Office. There is a repealing clause in Act No. 30 of the Extra Session of 1915, repealing "all laws and parts of laws in conflict herewith." There is a repealing clause also in Act No. 230 of 1918, repealing "all laws or parts of laws inconsistent with or contrary to this Act." And yet it was held, in the Hardtner Case, that the right of the Board of Commissioners of the Tensas Basin Levee District to demand an instrument of conveyance which would have the effect of conveying the mineral rights and the timber on the land of the State within the district, under the provisions of the ninth section of the act creating the district (Act No. 59 of 1886, as amended by Act No. 77 of 1888, and by Act No. 103 of 1892, and by Act No. 141 of 1910), was not repealed or affected by the repealing clause of either Act No. 30 of the Extra Session of 1915 or Act No. 230 of 1918. In so deciding it was said:

"The contention that the Act 30 of the Extra Session 1915 and the Act 230 of 1918 partially repealed and revoked by implication the land grants which had been made to the several levee boards throughout the state is only a repetition of the argument that was made with regard to the Act 215 of 1908, p. 319, which annulled all applications then pending in the state land office for the entry or purchase of public lands, and [which] provided that thereafter all sales of 'lands belonging to the state of Louisiana' should be made at public auction, after 30 days' advertisement. The repealing clause in the act of 1908, as in the Act 30 of [the] Extra Session 1915 and in the Act 230 of 1918, repealed all laws or parts of laws in conflict therewith. Thereupon the register of the state land office, with the approval of the state auditor, undertook to sell, as 'lands belonging to the state,' the lands in the several levee districts but not yet conveyed to the levee boards by instruments [of conveyance] signed by the register and auditor. This court ruled, in State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor et al., 142 La. 111, 76 So. 327, and

in Atchafalaya Land Co. v. Grace, Register et al., 143 La. 637, 79 So. 173, and in State ex rel. Board of Commissioners of Caddo Levee District et al. v. Grace, Register et al., 145 La. 962, 83 So. 206, that the lands which had been granted to the several levee districts, though not yet conveyed to the levee boards by instruments of conveyance signed by the register of the land office and the state auditor, were not to be regarded as 'lands belonging to the state of Louisiana,' and that such lands were not subject to entry or purchase at the state land office, because they had been withdrawn from the effect of the general land laws of the state."

What is meant by the statement that the lands belonging to the State within a levee district "had been withdrawn from the effect of the general land laws of the state" is, not that the Legislature may not at any time withdraw the grant, and subject the lands in a levee district to the general land laws of the State, but that the administrative officers of the State must recognize the right of the board of commissioners of a levee district to demand at any time a title for the State's land within the district, unless and until the Legislature itself interferes.

In the Hardtner Case, the court called attention to the fact that when the Legislature, by Act No. 171 of 1902, authorized the Register of the State Land Office to sell, at a certain minimum price, the Cross Lake lands in the Caddo Levee District, the Legislature repealed, in unmistakable terms, so much of Act No. 74 of 1892, creating the levee district, and so much of

Act No. 160 of 1900, enlarging the district, as would have been otherwise inconsistent with Act No. 171 of 1902. Here is what was said on the subject:

"It is true that, in the decision just quoted [McDade v. Bossier Levee District, 109 La. 625, 640, 33 So. 628, 634], the court referred to the lands within the levee district but not formally transferred by instruments of conveyance signed by the state auditor and the register of the land office as 'the lands so belonging to the state.' But that has no significance. Such lands do belong to the state, in the sense that the state may revoke the donation at any time, even to the prejudice of a third person claiming title from the levee board, if the land so claimed was not conveyed to the levee board by a recorded instrument of conveyance signed by the state auditor and the register of the land office; for, until the land is so conveyed to the levee board, the board has not a disposable title. It was so decided in State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891; where the Legislature had, by the Act 171 of 1902, p. 324, authorized the register of the state land office to sell the Cross Lake lands, at a certain minimum price per acre, and, for that purpose, in terms, repealed the Act 74 of 1892, creating, and the Act 160 of 1900, enlarging, the Caddo Levee District; the repealing clause being as follows, viz.:

" 'That Act No. 74 * * * for 1892 and Act No. 160 of * * * 1900 be, and the same are hereby repealed in so far as they may in any way whatever affect any of the lands described herein, the same

never having been transferred by the register of the state land office and the state auditor, nor either of them, by any instrument of conveyance from the state, as required by said act, to complete the title to same.'

"If the Legislature had intended by the Act 30 of [the] Extra Session 1915 to repeal the grant of the mineral rights, or by the Act 230 of 1918 to repeal the grant of all the forest timber on the lands in all of the levee districts throughout the state, it is not at all likely that the repeal or revocation would have been left to implication instead of being made in unmistakable terms, as it was made in the Act 171 of 1902."

In Ellerbe et al. v. Grace et al. 162 La. 846, 111 So. 185, 186, it was held that the plaintiffs, holding a title from the Board of Commissioners of the Caddo Levee District, for land for which the board had not obtained an instrument of conveyance from the Auditor and the Register of the State Land Office, had the right to enjoin the register from disposing of the land under the general land laws of the State. In the opinion rendered in the case it was said:

"In Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, it was held that the grant by the state, to the various levee boards, of certain lands within their limits, was not a grant of the lands in præsenti, but a grant of the right to acquire the lands by a conveyance from the proper state officers. It was there held, however, that—

" 'The various levee boards, all organized under similar statutes [Act No. 97 of 1890, Act No. 74 of 1892, etc.], and their assigns, acquired such an interest in the lands mentioned in the statutes that (1) the levee boards may at any time demand a conveyance thereof from the proper authorities (State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, 142 La. 111, 76 So. 327); (2) the assignee of the levee board may enjoin the register of the land office from selling such lands under the general land laws of the state (Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173); and (3) such assignee may even cause to have canceled a patent actually issued to a third person for such lands (State ex rel. Board of Com'rs of Caddo Levee Dist. v. Grace, 145 La. 962, 83 So. 206).'

"The reason is that by such grants to the different levee boards, the state intended to and thereby did, withdraw such lands thenceforth from the operation of the general land laws."

A similar opinion was rendered in Ballard Island Oil & Gas Co. v. Douglas, 172 La. 385, 134 So. 257, 258, thus:

"By Act No. 74 of 1892 and Act No. 160 of 1900, the state granted to the Caddo Levee District, all swamp lands and lands subject to overflow in the district, except such as were within the limits of the city of Shreveport. These were not grants in præsenti, but grants of the exclusive right to the lands, with the right in the board of commissioners of the district to have the lands conveyed to the Caddo levee district by formal act."

It appears, therefore, that, heretofore, the status or character of the titles to the State's lands in the several levee districts, before the board has obtained an instrument of conveyance from the auditor and the register of the state land office, was well defined by the decisions of this court. The title to such lands is in the State, but the board of commissioners has the absolute right to demand a title and place it on record at any time. That is true as well of the beds of the nonnavigable waters embraced within the lands belonging to the State, in a levee district, as of the lands surrounding the nonnavigable waters, belonging to the State, in the levee district.

Act No. 258 of 1910 has no repealing clause. But, if it had a clause repealing all laws or parts of laws in conflict or inconsistent with the provisions of the act, it would not have the effect of repealing the ninth section of the act of 1892, as amended by the act of 1900, in so far as this section gives to the board of commissioners the right to demand a title for the lands which are declared by the act of 1910 to be the property of the State; because there is nothing in the act of 1910 that is inconsistent with the right granted to the board of commissioners by the ninth section of the act of 1892, as amended by the act of 1900, to demand an instrument of conveyance for the lands which the act of 1910 declares are the property of the State.

On the seventh page of the prevailing opinion in the present case, it is said:

"Excluding the lands subject to private ownership and the lands previously transferred by the State, there were left only those the ownership of which was of necessity in the State, as to which no declaration by the Legislature was necessary, and those granted, but not actually transferred, to the several levee boards, as to which a legislative declaration was necessary to put back the title in the state."

Excluding the privately owned lands, and the lands which had been actually transferred by the State to the levee boards, when Act No. 258 of 1910 was enacted, there were not left two classes of State-owned lands, viz.: "those the ownership of which was of necessity in the State, * * * and those granted, but not actually transferred, to the several levee boards." By the ninth section of Act No. 74 of 1892, creating the Caddo Levee District, and by the corresponding section of every statute creating a levee district, every inch of land within the area comprising the district, then or thereafter belonging to the State, was thereby granted, given and donated to the board of commissioners of the levee district. Here is how that section of the act reads:

"That in order to provide additional means to carry out the purpose of this act, and to furnish resources to enable the said Board to assist in developing, establishing and completing the levee system in the said District, all lands now belonging or that may hereafter belong to the State of Louisiana and embraced within the limits of the Levee District as herein constituted shall be and the same are hereby granted, given, bargained, donated, conveyed, and delivered unto the said

Board of Commissioners of the Caddo Levee District," etc. Here the Legislature allowed a respite of six months for any one whose lands had been sold to the State for delinquent taxes to redeem his title; and then the Legislature proceeded, thus:

"After the expiration of the said six months it shall be the duty of the Auditor and the Register of the State Land Office on behalf and in the name of the State to convey to the said Board of Levee Commissioners by proper instruments of conveyance, all lands hereby granted or intended to be granted and conveyed to the said Board whenever from time to time the said Auditor or Register of the State Land Office or either of them shall be requested to do so by the said Board of Levee Commissioners or by the President thereof, and thereafter the said President of the said Board shall cause the said conveyances to be properly recorded in the Recorder's office of the respective parishes wherein the said lands are located and when the said conveyances are so recorded the title to the said lands with the possession thereof shall from thenceforth vest absolutely in the said Board of Commissioners, its successors or grantees."

It is said that Act No. 258 of 1910 covers the whole subject matter of the waters and beds of bayous, lagoons, lakes, bays and rivers, the ownership of which was not theretofore transferred or conveyed in the manner required by law; and that the act is wholly inconsistent and in irreconcilable conflict with the act creating the defendant levee board, upon the subject of the ownership of the waters and beds of bayous, lagoons, lakes and rivers, where there had been no transfer of ownership by the State at the date of the adoption of Act No. 258 of 1910.

Yes, the act of 1910 covers the subject of the waters and beds of the bayous, lagoons, lakes, bays and rivers, the ownership of which was not theretofore transferred or conveyed in the manner required by law. But I do not concede that the statute "covers the whole subject matter." There is plenty of law on the subject in the Civil Code. I do not find the act at all inconsistent, much less wholly inconsistent or in irreconcilable conflict, with the special laws creating the levee districts. These laws, each one of which creates only one corporation, are special laws on the subject dealt with. They do not deal with the same subject that the act of 1910 deals with. The act of 1910 says that the beds of the nonnavigable bodies of water in the State, not belonging to any person, firm or corporation, belong to the State. No one disputes that. The levee boards concede that the lands embraced in the grants by the State remain the property of the State until the levee boards put their instruments of conveyance on record. The act of 1910 does not declare or even hint that the levee boards are thereby deprived of their right to acquire title to the bed of a nonnavigable body of water by virtue of an instrument of conveyance for the land embracing the nonnavigable body of water.

It is said that any other construction than that which is given to the act of 1910 in the prevailing opinion in this case

"would stamp Act No. 258 of 1910 as without meaning and as useless legislation." It is not for the court to say that it was useless legislation for the Legislature to declare that all the waters and the beds of bodies of water in the State, not owned by any person, firm or corporation, belonged to the State, and that there should never be any charge assessed against any person, firm or corporation for the use of the waters of the State for municipal, agricultural or domestic purposes. That was a matter entirely within the province of the Legislature.

At the time when Act No. 258 of 1910 was enacted the beds of the nonnavigable bodies of water in Louisiana had no value, if separated in ownership from the lands of which they formed a part. It is, therefore, impossible to imagine what motive the Legislature could have had at that time for desiring to sever the title for the beds of her nonnavigable bodies of water from the title for the lands of which these nonnavigable water bottoms formed a part. It is said in the Civil Code, in article 18, that the universal and most effectual way of discovering the true meaning of a law, if its expressions are dubious, is to consider the reason for which it was enacted, "or the cause which induced the Legislature to enact it." What reason or cause, I ask, could the Legislature have had for intending to separate the ownership of the beds of her nonnavigable bodies of water from the ownership of the lands which embraced them? To say that the meaning which the majority of the members of the court are giving now to the expressions in the act of 1910 is not even

dubious would be a reflection upon the understanding of the officers who have been construing and administering the law otherwise for a quarter of a century. It was back in 1912 when the state auditor and the register of the state land office issued the instrument of conveyance which is in contest in this case. If the Legislature had intended by the act of 1910 to separate the ownership of the beds of her nonnavigable bodies of water from the ownership of the lands embracing them, the state engineers would have been busy all these twenty-seven years, surveying and separating, from the adjacent lands, these shapeless stripes and spots of water-covered land which the State is said to have withdrawn from the grants to the levee boards. The effect of this decision will be to destroy the titles of all who have bought from the levee boards lands for which the levee boards obtained their instruments of conveyance after the act of 1910 was enacted, as far as the beds of the nonnavigable bodies of water forming parts of such lands are concerned. If no cause or reason can be given why the Legislature should have intended, by the act of 1910, to sever the title for the beds of her nonnavigable waters from the title for the lands of which they formed a part, the construction which is given to the statute in the prevailing opinion in this case is contrary to the rule which is declared in article 18 of the Civil Code to be "the universal and most effectual" rule of statutory construction.

For these reasons I respectfully decline to subscribe to the prevailing opinion in this case.