233 So.2d 542 (1970)
255 La. 857
Mrs. Lillian C. STEVENS, Testamentary Executrix of the Estate of Dr. Noah S. Cutrer, Nicholas D. Olivier, Arthur C. Reuter
v.
STATE MINERAL BOARD, Gulf Oil Corporation, Estate of William G. Helis, et al.
No. 49894.
Supreme Court of Louisiana.
March 30, 1970.
*543 Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for appellant.
Morris Wright, Booth Kellough, Melvin Evans, New Orleans, Tucker, Martin, Holder, Jeter & Jackson, H. M. Holder, Shreveport, Jack P. F. Gremillion, Atty. Gen., Edward M. Carmouche, John L. Madden, Asst. Attys. Gen., for appellee.
Doyle, Smith, Doyle, Gordon, Arata & Watters, Donald W. Doyle, Roger H. Doyle, F. Henri Lapeyre, Jr., Solomon S. Goldman, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Murphy Moss, William R. Forrester, Jr., Ogden & Ogden, William W. Ogden, Charlton B. Ogden, II, William R. Ary, New Orleans, amici curiae.
HAMITER, Justice.
Plaintiffs, Mrs. Lillian C. Stevens, testamentary executrix of the Succession of Dr. Noah S. Cutrer, Nicholas P. Olivier and Arthur C. Reuter, alleged themselves to be the owners of certain described property in Plaquemines Parish and instituted the instant proceedings to remove purported "clouds" from its title.
The "clouds" constituted Lease No. 195, which was granted initially on February 20, 1928 by the State of Louisiana to one M. Hession for the development of oil, gas and other minerals, as well as other instruments executed in connection therewith. The lease is presently owned by Gulf Oil Corporation, the Estate of William G. Helis, and five partners in that Estate who, along with the Mineral Board of the State of Louisiana, are the named defendants.
Prior to filing an answer the defendants filed a motion for a summary judgment on two grounds: (1) that the first four links of plaintiffs' title are fatally defective, and (2) that the property involved was adjudicated to the state in 1932 for nonpayment of 1931 taxes due the state, and that any purported redemption by plaintiffs' ancestor in title was invalid because it was in contravention of Article IV, Section 2 of the Louisiana Constitution of 1921 which prohibits the state from alienating the fee bed of any navigable waterway.
The motion was sustained by the district court, it declaring that plaintiffs owned no part of the property in dispute. The judgment was affirmed on appeal. 221 So.2d 645. We granted certiorari at the instance of the plaintiffs. 254 La. 452, 223 So.2d 866.
The plaintiffs' petition sets forth their chain of title (among other allegations), including the following links which are pertinent to this litigation; (1) a transfer dated April 2, 1895 by the State of Louisiana to the Lake Borgne Levee District (referred to hereinafter as Levee District) signed by the Register of the State Land Office; (2) a transfer in the nature of a correction deed, dated July 27, 1910, by the State of Louisiana to the same Levee District and executed by the State Auditor; (3) a sale of part of the property involved in 1911 from the Levee District to the Plaquemines Land Company; and (4) a similar sale on the same date as Number 3 of the remainder of the property, it being between the same parties. These last two links are called Patents Nos. 59 and 60.
The petition, together with a supplemental one filed by order of court on defendants' exception of vagueness, further sets forth that the property in dispute is *544 land in the form of "water bottoms"; that it has been of the same nature since time immemorial; and that it was "water bottoms" on each of the dates set forth in the first four links of plaintiffs' title. Alternatively, it shows that if the property was not "water bottoms" from time immemorial then it had become "water bottoms" by 1895. Also, it asserts that any defect in the title as above set forth was cured by the prescription of six years as provided in Act 62 of 1912, and further that, consequently, such title in this respect is now unassailable. (Reliance is placed on our decisions in Humble Oil and Refining Company v. State Mineral Board et al., 223 La. 47, 64 So.2d 839; California Company v. Price et al., 225 La. 706, 74 So.2d 1 (and the cases cited therein) and State v. Cenac et al., La.App., 132 So.2d 897 in which certiorari was denied, 241 La. 1055, 132 So.2d 928).
As aforestated, without filing an answer, the defendants moved for a summary judgment in their favor. Therein they averred that they (the defendants), accepting the plaintiffs' admissions for the purposes of the motion, "show that according to the maps and plats filed in support of this motion, that the property which plaintiffs refer to as land in the form of `water bottoms', is and was, on the dates referred to by plaintiffs, actually the bed of navigable waters, known or referred to as Black Bay and/or Breton Sound, which are and were bays, sounds and/or inlets bordering on or connected with the Gulf of Mexico, within the Purview of Act 189 of 1910."
Defendants further asserted in the motion that on November 26, 1932 the property was sold to the state for 1931 taxes which sale was recorded December 31, 1932, and by virtue of the sale the title became vested in the State of Louisiana; and that a subsequent purported redemption thereof by the tax debtor (plaintiffs' ancestor-in-title) on September 6, 1933 was null and void inasmuch as the property was no longer subject to redemption in view of the provisions of Article 4, Section 2 of the Louisiana Constitution of 1921.
Finally, the motion averred that "in light of the foregoing, based on the admissions and allegations of the petition as amended, the exhibits annexed thereto, the affidavit annexed thereto and filed herewith and documents annexed thereto, and interrogatories and answers thereto filed herein, there being no genuine issue as to material fact, defendants move, pursuant to the provisions of Article 966 of the Code of Civil Procedure, for summary judgment herein in their favor since they are entitled to such judgment as a matter of law."
Although plaintiffs did not file any written response to the motion for a summary judgment, it appears that when the hearing was held thereon they did object to submitting the matter on such motion. Subsequently, they filed a written objection to a decision being rendered on the motion.
As above mentioned, following the hearing, the trial judge rendered judgment on defendants' motion for a summary judgment, it decreeing that the plaintiffs and their authors in title had never had any valid or effective title in and to the property claimed. Further it overruled the plaintiffs' plea of prescription predicated on Act 62 of 1912. (However, the judgment does not specifically dismiss plaintiffs' suit.)
In his written reasons the trial judge observed that it was proper for him to entertain the motion for a summary judgment, he showing that defendants had presented "documentary evidence directed, primarily, at establishing that the `water bottoms' here involved, were in fact the beds and bottoms of navigable bodies of water, Back Bay and Breton Soundbeing bays and sounds `bordering on or connected with the Gulf of Mexico' within the purview of the so-called `Oyster Statutes' hereafter discussed, and about which there can be no question."
The judge further found (in connection with the merits of the motion) that "The various maps and documents submitted in support of defendants' motion, establish the *545 fact that the `water bottoms' here involved, were and are, in fact, the beds and bottoms of Black Bay and Breton Sound, which were and are navigable bodies of water `bordering on or connected with the Gulf of Mexico' within the purview of the so-called `Oyster Statutes'". (The Oyster Statutes referred to are Act 189 of 1910, its predecessors, and those statutes which replaced it.)
He then ruled that each of the four links of plaintiffs' title (referred to above) were fatally defective for various reasons assigned, among which was that the property in question was owned by the state and was inalienable by virtue of Act 189 of 1910.
The Court of Appeal reversed the district court with respect to the latter's ruling as to the first two links of plaintiffs' title, it holding that the validity of those transfers by the state to the Levee District were controlled by our decision in Humble Oil and Refining Company v. State Mineral Board, supra, and that in view of such decision they were unassailable.
However, the Court of Appeal affirmed that part of the judgment which held that the transfers in 1911 were null for the reasons that Act 189 of 1910 operated as a "retaking" of title by the state to itself (and out of the Levee Board) and that, therefore, the Levee Board in 1911, having no title to transfer, could convey none to Plaquemines Land Company. Alternatively, the court held that if the 1910 act did not have that effect then the purported sales in 1911 were in contravention of the prohibitions of the 1910 act against transfers of such lands to private individuals or corporations; and that they, therefore, conveyed no title and that such defect was not cured by the prescription provided in Act 62 of 1912. (No mention was made in the opinion as to the propriety of the district court's rendering judgment on the motion for a summary judgment.)
In the plaintiffs' application for certiorari (which we granted) they urged (1) that the Court of Appeal erred in holding that links three and four of their chain of title (Patents Nos. 59 and 60) were fatally defective and that such defect was not cured by the Act of 1912 and (2) that the court erred in holding that the case could properly be disposed of on a motion for a summary judgment. (Defendants did not apply for certiorari from that portion of the judgment which held valid the transfers from the state to the Levee Board.)
Statements made in the original briefs filed herein, as well as on the oral argument, created considerable confusion in our minds as to whether or not there were any genuine disputed issues of fact involved in this case. In order to determine whether or not the case could properly be disposed of by a motion for a summary judgment, we posed specific questions on that matter to counsel for both sides. In answer thereto the defendants still maintain that there is no genuine disputed issue of fact involved. Nevertheless, they insist that if we reverse the judgment of the Court of Appeal on the issues of law now presented the case will have to be remanded to the district court to try numerous questions of fact which they will assert when they file their answer, one of which is "whether the property claimed was land or water bottoms, the present status of the property claimed as land or water bottoms, and the effect of the doctrine of Miami Corporation v. State, 186 La. 784, 173 So. 315, in light of the fact determined." Also there appears to be some question as to the sufficiency of the so-called patents from the "standpoint of signature and recordation which would require the taking of considerable testimony * * *." (Italics ours.)
Likewise, in connection with the alternative issue involving the tax sale and redemption, there appears to be a dispute as to the date of the tax redemption which may affect the outcome of this litigation if the court were to decide the first contention adversely to the defendants. This unresolved factual issue is recognized by defendants in their supplemental brief wherein it is stated that "Even plaintiffs' *546 contention that the redemption reflects an improperly corrected date (it) can readily be solved by the court on the face of the documents." We do not agree with this statement, particularly in view of the conflicting dates found in the documents submitted by the defendants themselves, one of which also conflicts with the date alleged in the motion for a summary judgment.
If one principle is well established in the cases dealing with motions for summary judgments it is that "In ruling on a motion for summary judgment the court's function is to determine whether such a genuine issue exists, not to resolve any factual issue." 6 Moore's Federal Practice 2281, Section 56.15. The defendants insist, however, that in a motion for a summary judgment, permitted by Article 966 of our Code of Civil Procedure, a litigant may present only a part of his case, and to that end he may (as defendants say they have done here) admit certain facts only for the purpose of the motion; but that if he ultimately loses on such facts he can start over and establish a different and even contrary factual situation to which different principles of law are applicable.
We do not believe that the cited article permits such a procedure. Nor would permitting such pleading, in our view, promote the purpose to be served by summary judgments which is to facilitate and speed up the trial of cases. To the contrary, in many cases it will result in "piecemeal" trials and cause unnecessary delays.
Moreover, if we adopt the defendants' application of the article it would render useless our well recognized pleading of the exceptions of no cause of action and no right of action. We do not believe that the redactors of the Code anticipated such a result. (It might be pointed out that the instant motion for summary judgment has been used as a substitute for an exception of no right of action to attack the plaintiffs' title, in a title suit, which exception itself, under the circumstances existing here, would not lie. See Wischer v. Madison Realty Company, Inc., 231 La. 704, 92 So.2d 589 and Cattle Farms, Inc. et al. v. Abercrombie et al., 244 La. 969, 155 So.2d 426.)
We observe also that through the use of an exception of vagueness the plaintiffs were (as we have heretofore shown) compelled to allege the nature of the property in question (that is, whether it was "water bottoms" or land) presently and on the various dates involved in the first four title links. We are at a loss to understand under what theory of law the exception of vagueness on this issue was maintained and the plaintiffs ordered to so plead. But, obviously, the purpose of defendants in obtaining such a ruling was to permit them to attempt use of the summary judgment as they have done, because clearly they could not have achieved the result by an exception of no right of action.
The defendants urge that such an application of Article 966 is proper inasmuch as our articles are patterned after Rule 56 of the Federal Rules of Civil Procedure, and the use of such Rule is permitted by the federal courts. They cite 6 Moore's Federal Practice, Second Edition, commencing at page 2247. However, there is authority to the contrary. See Lloyd v. Franklin Life Insurance Company, 9 Cir., 245 F.2d 896 and Tri-Continental Financial Corporation v. Tropical Enterprises, 5 Cir., 265 F.2d 619. Besides we do not feel compelled to follow such practice in connection with the article involved inasmuch as it is not a replica of Rule 56. One important difference, we note, is that such Rule permits a summary judgment, "interlocutory in character". Article 966 does not.
Our conclusion, therefore, is that Article 966 was not intended to be used to permit "piecemeal" trial, or usurp the function of the well recognized exceptions of no right or no cause of action. Rather, it was intended to be used only in cases where there is no material issue of fact to be determined; where a judgment for either party might be rendered in the case (depending *547 on how the legal issues are resolved); and where such judgment disposes of the entire case. Such a situation is clearly not presented here.
For the reasons assigned the judgment of the district court and of the Court of Appeal entered for the defendants on the motion for summary judgment are annulled and set aside. The motion for a summary judgment is overruled. And the case is remanded to the district court for further proceedings in accordance with law and the views herein expressed. Defendants are to pay all costs of the proceedings in this court and in the Court of Appeal. All other costs are to await a final determination of the case.
SANDERS, J., dissents, being of the opinion that the result reached by the Court of Appeal is correct. See 221 So.2d 645.
HAMLIN, Justice (dissenting).
I feel that I must respectfully dissent from the majority view in this case on the following grounds, each one of which will be hereinafter separately discussed:
I. Navigable waters and the beds of same within the boundaries of this State are common or public things and insusceptible of private ownership. Any patent issued by the State to its navigable waters is an absolute nullity.
II. The four links in plaintiffs' title are null and void.
III. Act 62 of 1912 is not applicable in this case; and, it cannot breathe life into a nullity.
I. NAVIGABLE WATERS AND BEDS OF SAME ARE COMMON OR PUBLIC THINGS AND INSUSCEPTIBLE OF PRIVATE OWNERSHIP.
Plaintiffs have alleged that all of the property involved in this suit became and has been in the form of "water bottoms" since the beginning of time. The record as made up demonstrates the navigability of Black Bay and Breton Sound. It has been well recognized that if a body of water is navigable in part then such characteristic of "navigability" extends to the water's edge or the shore.
It has been the public policy of the State of Louisiana at all times since its admission into the Union that all navigable waters and the beds of same within its boundaries are common or public things and insusceptible of private ownership.
In his dissent from the denial of certiorari in State v. Cenac, La.App., 132 So.2d 897, appearing in 241 La. 1055, 1062, 132 So.2d 928 at pp. 930, et seq. and in which I joined, Mr. Justice Hawthorne (now retired) eloquently, thoroughly and correctly expressed the sound public policy of this State. I am going to presume to summarize what he said and also quote freely from his dissent.
The State in its sovereign capacity is vested with title to the navigable waters and their beds.
This ownership carries with it the right to all that the beds produce, and all that becomes united to them either naturally or artificially, and gives the right to use, enjoin and dispose in the most unlimited manner. La.Civ.Code Arts. 491, 498, 505.
The law is well settled that ownership carries with it the right of possession.
Private ownership of navigable waters would carry with it the right of the owner to enclose the area which he owns, the right to deny to the public the use of these waters for navigation, the right to deny to the public the privilege of taking fish, oysters and shrimp from these watersa situation distinctly against public policy. It follows that it is also against public policy for the private owner to extract the oil and gas from these natural waters for his own use; also he cannot extract and remove for his own use sand, gravel and shells.
It is clearly against public policy that these rights be vested in private persons. *548 They are rights that belong to all the people, and since Louisiana became a state it has been contrary to public policy and contrary to the express provisions of our Civil Code to permit private ownership of navigable bodies of water.
Because of the public policy of the State, there was introduced in the Louisiana Senate on June 10, 1954, eleven days after the decision of this Court in the Price Case (225 La. 706, 74 So.2d 1) as emergency legislation Senate Bill No. 353, which was adopted by the Legislature as Act 727 of 1954. This Act provides that it has been the public policy of the State at all times since its admission into the Union that all navigable waters and their beds within the State's boundaries are common and public things and insusceptible of private ownership; that the intent of the Legislature at the time of the enactment of Act 62 of 1912 (now R.S. 9:5661) and continuously thereafter was, and at the present time is, to ratify and confirm only those patents which convey or purport to convey public lands susceptible of private ownership of such a nature and character that their alienation or transfer is authorized by law, but not patents or transfers which purport to convey or transfer navigable waters and their beds. This act further provides that any patent or transfer theretofore or hereafter issued or made is null and void so far as it purports to include navigable waters and their beds, as having been issued or made in contravention of the public policy of this state. The act also provides that no statute enacted by the Legislature shall be construed to validate by prescription or peremption any patent or transfer issued by the state insofar as it purports to include navigable or tide waters or their beds. Moreover, the act specifically repeals Act 62 of 1912 insofar as that statute may conflict with the provisions of the 1954 act.
Justice Hawthorne, in discussing the Cenac Case, supra stated:
"* * * In refusing the state's application the majority of the court denies the state an opportunity to argue the effect of this actnotwithstanding that the act plainly provides that any patent like the one in the instant case, heretofore or hereafter issued, is null and void insofar as it includes navigable waters and the beds thereof, notwithstanding that it plainly provides that in enacting Act 62 of 1912 it was the intent and purpose of the Legislature that that act was to be applicable only to public lands susceptible of private ownership, notwithstanding that it specifically repeals Act 62 of 1912 insofar as it is in conflict therewith, and notwithstanding that it specifically provides that no act of the Legislature is to be construed so as to validate by prescription or peremption any patent issued by the State so far as it purports to include navigable or tide waters or their beds.
"As I said in my dissent in the Price case, supra, the ruling of this court permitting private ownership of navigable bodies of water within the boundaries of this state is in direct violation of, and contrary to, the express provisions of our Civil Code (Arts. 450, 451, 453, 482), and is contrary to the holding of this court in a long line of jurisprudence. This jurisprudence extends from 1838 to 1959, and includes Milne v. Girodeau, 12 La. 324; Zeller v. Southern Yacht Club, 34 La.Ann. 837; Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249; Louisiana Navigation Co., Ltd., v. Oyster Commission of Louisiana, 125 La. 740, 51 So. 706; State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405; Miami Corporation v. State, 186 La. 784, 173 So. 315; Roy, Inc., v. Board of Commissioners, 237 La. 541, 111 So.2d 765.
"In the last cited case, decided in 1959, plaintiff was seeking compensation for the appropriation of land bordering on Lake Pontchartrain. In denying compensation we said: `It is immaterial whether the property be classified as sea shore, which, being common property, belongs to no one in particular and is insusceptible of private ownership, or as the bed of a navigable lake, ownership to which is vested in the state up to the high-water mark, since in *549 either event plaintiff would not be entitled to compensation.' In support of this statement the court cited Articles 451, 450, and 482 of the Civil Code and many decisions of this court, most of which I have cited just above.
"That it is against the public policy of this state for private individuals to own navigable bodies of water is shown beyond question by acts of the Legislature from 1886 to 1954. These statutes are Act 106 of 1886, Act 110 of 1892, Act 121 of 1896, Act 153 of 1902, Act 52 of 1904, Act 189 of 1910, Act 54 of 1914, Act 139 of 1924, Act 67 of 1932, and Act 727 of 1954. Four of these statutes were enacted later than Act 62 of 1912, which the majority believes has the effect of vesting private individuals with title to navigable waters of this state when claimed under a patent issued prior to 1921. I have already discussed the provisions of the 1954 act. It should be noted that there is language in acts adopted after 1912 which is pertinent here. These acts, after enumerating certain kinds of navigable bodies of water, provide that no grant, sale, or conveyance of land forming the bottoms of such bodies of water `shall hereafter be made by the Register of the Land Office' and that `no one shall own in fee simple any bottoms or lands enumerated'.
"It is also pertinent to observe here that Act 62 of 1912, which the majority considers has the effect of vesting in private persons title to navigable bodies of water under patents issued prior to 1921, is not a legislative grant or conveyance of any navigable body of water, but is nothing more than a statute of prescription or peremption. It can be applicable only to patents to public lands that are susceptible of private ownership, of such a nature and character that their alienation or transfer is authorized by law; it cannot apply to patents to the navigable waters of this state.
"In Illinois Central Railroad Co. v. People of State of Illinois, 146 U.S. 387, 13 S.Ct. 110, 118, 36 L.Ed. 1018, the railroad claimed the ownership of the lands beneath navigable waters of Lake Michigan under a legislative grant. The Supreme Court of the United States in that case stated that the question to be considered was whether the Legislature of Illinois was competent to deprive the state of its ownership of these submerged lands. After stating that title to the lands under navigable waters was in the State of Illinois (as it is in the State of Louisiana), the court said:
"`But it is a title different in character from that which the State holds in lands intended for sale. It is different from the title which the United States hold in the public lands which are open to pre-emption and sale. It is a title held in trust for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein freed from the obstruction or interference of private parties. * * * A grant of all the lands under the navigable waters of a State has never been adjudged to be within the legislative power; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation. The State can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties, * * * than it can abdicate its police powers in the administration of government and the preservation of the peace. * * *' (Italics mine.)
"So far as I know, the Louisiana Legislature, unlike the Illinois Legislature, has never attempted to convey to private persons title to the beds of navigable bodies of water. Title to such property is in the state in its sovereign capacity, which holds it in trust for the use and benefit of all the people. Our Legislature has consistently maintained and protected the trust imposed upon the state for the benefit of the people, as evidenced by the acts which I have cited above, particularly the 1954 act. Certainly it cannot be argued or contended that Act 62 of 1912 is a legislative grant of the beds *550 of navigable waters; as stated previously, that act is nothing more than a statute of prescription or peremption designed to confirm and quiet patents to lands susceptible of private ownership, of such a nature and character that their alienation or transfer is authorized by law.
"Much has been said about the fact that prior to our 1921 Constitution there was no consitutional prohibition against the Legislature's alienating the beds of navigable waters; but to me it is clear that even before the 1921 Constitution, and even without the prohibition contained in Article 4, Section 2, of that Constitution, the Legislature of this state was without power or authority to convey to private individuals the title to the beds of navigable waters belonging to the state. Such a conveyance would be a breach of trust, for properties of this nature belong to all the people of the state for their use and enjoyment; and, as stated by the Supreme Court of the United States in the Illinois Central Railroad case, supra, `A grant of all the lands under the navigable waters of a State has never been adjudged to be within the Legislative power; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation'. (Italics mine.)
"A patent from the state covering navigable waters issued to private persons, either before or after the adoption of the 1921 Constitution, is null and void ab initio. Even though such a patent was null and void, according to the majority's view it was made unassailable by Act 62 of 1912 with the result that title to navigable waters became vested in private individuals. Since the Legislature is without power to make a legislative grant to private persons of the state's title to navigable bodies of water, how can its adoption of Act 62 of 1912 accomplish such a transfer by validating an invalid and null patent? This act simply fixes a prescriptive or peremptive period for an attack on a patent issued by the state, and the Legislature could not by adoping this act take title away from the state and vest it in private individuals. In short, the Legislature could not by this method accomplish indirectly what it could not do directlyand, moreover, what it never intended to do.
"I do not think this writ should be denied on the theory that this court is bound to follow a rule of property which the majority considers has been established in this state by the decisions in Humble Oil & Refining Co. v. State Mineral Board (the `Duck Lake' case), 223 La. 47, 64 So.2d 839, and California Co. v. Price, 225 La. 706, 74 So.2d 1, and other decisions containing statements which I regard as dicta.
"In Miami Corporation v. State, 186 La. 784, 173 So. 315, 320, this court had occasion to declare forcefully and clearly that even in regard to the rules of property the maxim of stare decisis is not absolutely inflexible, particularly when it is shown that by following rather than by disregarding previous erroneous decisions from which evil resulted the community would suffer greater damage. There the court said: `In such situations, the courts have overruled the prior cases, in order to correct the jurisprudence. In Louisiana, this court has never hesitated to overrule a line of decisions where they establish a rule of property when greater harm would result from perpetuating the error rather than from correcting.' The author of that opinion then discussed other cases where this court had overruled previous decisions relied on as establishing a rule of property, in particular a case in which, according to the author of the opinion, this court `swept aside a long line of decisions relied upon by the plaintiff as a rule of property'.
"Here greater harm would result from perpetuating the rule of property than from overruling the cases establishing it. Surely it is better to protect the fish than to protect the so-called rule of property which permits private individuals to enrich themselves at the expense of the people of this state.
"Even if it should be conceded that the Price and Humble cases did establish a rule *551 of property, the basis for this rule of property was repudiated and removed from the law when the Legislature passed Act 727 of 1954. This act provides that any patent purporting to convey title to navigable waters and their beds is null and void, that the 1912 act is applicable only to patents to lands susceptible of private ownership, and that no act of the Legislature is to be construed as validating by prescription or peremption any patent issued by the state insofar as it purports to include navigable waters or their beds. This statute is the law of this state, made so by the Legislature, and is presumed to be constitutional and valid; and it must be given effect until construed and declared invalid by a court of competent jurisdiction. By denying the writ the majority of the court has refused to consider the effect of this act upon this court's own decisions, preferring to follow those very decisions which the Legislature repudiated when it passed the act.
"I am firmly convinced that any patent issued by the state to its navigable waters is an absolute nullity, void ab initio, and conveyed no title to the patentee, and that the patentee therefore has no title which can be ratified, confirmed, or made unassailable by prescription or peremption. This is true because under our Code such property is not subject to private ownership, and private ownership of such property has been contrary to public policy ever since this state was admitted into the Union. Furthermore, Act 62 of 1912 had for its purpose to make unassailable only patents issued to lands which the state could alienate, and not patents to navigable waters and their beds which are insusceptible of private ownership. I am further convinced, as stated previously, that the Legislature has no power or authority to alienate navigable waters or their beds for the reasons given above even in the absence of a constitutional prohibition.
"Since I hold these views, with all due respect to my colleagues constituting the majority I think the writ applied for in the instant case should be granted.
"I concurred in the opinion rendered by the majority of the court in the second Price case for the reasons stated in my concurring opinion, which speaks for itself. See 234 La. 338, 357, 99 So.2d 743. In that concurring opinion, however, I was careful to state that I was still convinced that the holding of this court in the first Price case, 225 La. 706, 74 So.2d 1, was clearly wrong. In the instant case no new argument has been advanced or principle of law cited which has caused me to change this view.
"Customarily the members of this court write their reasons for dissents such as this on the face of the application for writs, but due to the length of this particular dissent it is not practical for me to follow this custom.
"The most unusual thing about this case is that the court ignores, and refuses to consider and give effect to, a law (Act 727 of 1954) enacted by the Legislature which declares that a patent such as the one here involved `heretofore or hereafter issued or made is null and void, so far as same purports to include such navigable waters and the beds thereof * * *'. (Italics mine.) The legislative branch of our state government enacted this law, and it remains and is the law; and all courts should abide by and follow it unless it should be declared illegal or unconstitutional by a court of competent jurisdiction, which has not been done. If by the denial of this writ the court intends to declare the act unconstitutional, the case becomes even more unusual and without precedent, for neither the district court nor the Court of Appeal, whose judgment we are here requested to review, considered or passed upon the legality or constitutionality of the act."

II. THE FOUR LINKS IN PLAINTIFFS' TITLE ARE NULL AND VOID.
Link 1. April 2, 1895. Transfer by State of Louisiana to Lake Borgne Levee District.

*552 Link 2. July 27, 1910. Transfer by State of Louisiana to Lake Borgne Levee District.
The Court of Appeal held that these transfers are valid. I do not agree. It is my view that they are not valid because the land was the bed of a navigable body of water insusceptible of private or quasiprivate ownership; and, being sovereignty lands the Register of the State Land Office and Auditor were not authorized to transfer same to the Levee District.
Further, Acts 189 and 258 of 1910, besides prohibiting such transfers, operated to "retake" title thereto and reinvest it in the State; hence, the Levee District had no title to the property here involved on the date of Links 3 and 4 following. Therefore, such purported patents could convey no title to The Plaquemines Land Company. Compare State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678, for a discussion of the effect of Act 258 of 1910.
Link 3. Patent No. 59, which recites that The Plaquemines Land Company purchased at Sheriff's Sale, September 30, 1911, under the provisions of Act No. 215 of 1908, 160 acres of land.
Link 4. Patent No. 60, which is the same as Patent No. 59, but with respect to a different portion of the property.
The Court of Appeal held that these transfers are fatally defective. In so doing, the Court of Appeal cited Act 189 of 1910, which it designated as an "Oyster Statute," and Act 258 of 1910.
Section 1 of Act 189 provides that the type of property involved in this case "shall be, continue and remain the property of the State of Louisiana," and prohibits a sale thereof thereafter by the "Register of the State Land Office by any other official, or by any subordinate corporation."
Section 1 of Act 258 provides that the type of property involved in this case (not then under the direct ownership of anyone else or other entity) "are hereby declared to be the property of the State."
The Acts of 1910 were in full force and effect at the time of Transfer No. 2, July 27, 1910, from the State to Lake Borgne Levee District. They were also in full force and effect at the time of Transfers Nos. 3 and 4, September 30, 1911, from the Levee District to The Plaquemines Land Company. Therefore, the property, having been declared the property of the State by Act 258, and a sale thereof being prohibited by Act 189, could not be legally and validly sold on September 30, 1911, by any subordinate corporation, the Levee District, to The Plaquemines Land Company. The Levee District had absolutely no title to convey. If it ever had a title, which I deny, the State had retaken it. Rights of The Plaquemines Land Company had not intervened. (Compare State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678, for a discussion of the effect of Act 258 of 1910.)
This prohibition and retaking, in my opinion, are expressions of the sound public policy expressed by Justice Hawthorne, supra.
III. ACT 62 OF 1912 IS NOT APPLICABLE IN THIS CASE; AND IT CANNOT BREATHE LIFE INTO A NULLITY.
As to the applicability of Act 62 of 1912 to this case, I again refer to the dissenting opinion of Justice Hawthorne in the Cenac Case, supra. This Act was passed after the null transfers. Also, it could not breathe life into a nullity.
"Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed." R.C.C., Art. 12; State ex rel. White v. Mason, 17 La.App. 504, 133 So. 809, 811; Sonnier v. Fris, 220 La. 1085, 58 So.2d 393.
"The prescription of one year against an action to annul a judgment obtained *553 by fraud, or in consequence of the loss of a receipt as provided for in article 613 of the Code of Practice, is not applicable to a confession of judgment made in violation of a law of public policy, because a transaction of that unlawful character cannot be made valid by ratification, either express or tacit. * * *" Phillips v. Bryan, 172 La. 269, 134 So. 88.
"NULLITY. It has been said that it is very difficult to give a concise, and yet sufficiently comprehensive definition of a nullity. In law it means a void act or an act having no legal force or validity; invalid; null; that which is morally impossible. It is such a defect as renders the proceedings in which it occurs totally null and void, of no avail or effect whatever, and incapable of being made so. * * *" 66 C.J.S. NULLITY p. 984.
In view of the foregoing, I agree with the findings of the trial court and the Court of Appeal that there is no genuine issue as to material fact in this case.
I respectfully dissent.