HAMITER, Justice.
The California Company, a corporation organized in the State of California and qualified to do business in Louisiana, instituted this concursus proceeding to determine the ownership of funds representing accumulated oil royalties from eight producing wells drilled in the bed of Grand Bay in Plaquemines Parish and located in Sections 17, 19, 20 and 22, Township 19 South, Range 18 East.
Grand Bay is a body of salt water, navigable in 1812 and also presently, lying east of the Mississippi River at or near the southern extremity of Breton Sound and connecting with the Gulf of Mexico. The State of Louisiana, by virtue of its inherent sovereignty and in view of the naviga *711 ble character of such Bay, acquired title to the bed thereof when admitted to the union on an equal footing with the thirteen original states.
Under date of November 4, 1874, in consideration of the prior payment to it of the sum of $1,695.48, the State issued patent No. 1965 which recited a grant and sale to John Beckwith of certain described lands in Township 19 South, Range 18 East, approximately a total of 6,439.29 acres, including the sections above named in which the bed of Grand Bay lies. The patent was signed by the Governor and the Registrar, and it was recorded in the State I,and Office.
From the State of Louisiana, represented by the Mineral Board, and also from the heirs and successors of John Beckwith, the California Company obtained separate mineral leases, pursuant to which the wells in question were drilled and production obtained. And in this proceeding it has impleaded those adverse claimants, they being referred to hereinafter as “State” and “Beckwith group”, respectively.
The principal contention of the State is that the bed of Grand Bay (a navigable arm of the sea when Louisiana was admitted into the union in 1812 and then owned by it by virtue of its inherent sovereignty, all as above shown) is insusceptible of private ownership and has never been disposed of validly.
Alternatively, the State urges a derivative title thereto predicated on an adjudication to it in 1883 for unpaid taxes of 1881 and 1882 under an assessment in the name of John Beckwith. Also, in the alternative, the State pleads several prescriptions of 10 and 30 years.
Those in the Beckwith group deraign title from and claim under the mentioned patent No. 1965, issued by the State in 1874 to John Beckwith, they admitting, however, that their ownership of the bed of Grand Bay under the patent has been and is now subject to public rights of commerce, navigation and fisheries. Additionally, they specially plead the prescription of six years under Act No. 62 of 1912, LSA-R.S. 9:5661, averring that it has foreclosed any rights the State previously had to question the validity of the Beck-with patent.
Regarding the State’s first alternative contention they assert that the tax deed did not describe and, therefore, did not include the land in dispute; and that the purported tax sale was invalid and has been cancelled by authorized State officials. The other alternative claims of prescription made by the State are also contested.
Without passing upon any of the alternative pleas of the State the district court, following the trial, rendered a judgment declaring that claimant to be the owner of the royalties due and to become due from the eight producing oil wells located in the bed of Grand Bay, and dismissing the claims of the Beckwith group.
*713 The Beckwith group appealed. The State has answered the appeal, asserting that the judgment is correct for the written reasons assigned by the district court, and reasserting additionally all other contentions and pleas made by it.
In reaching his conclusion the district judge, to quote from his assigned written reasons, said in part:
“Prior to the enactment of the Louisiana Constitution of 1921, Article IV, Section 2, the Legislature of Louisiana was not prohibited from alienating the beds of arms of the sea. However, the public policy of this State, as declared by the Legislature, has always been to place sea-bottoms within that class of things which are to be considered insusceptible of private ownership and therefore inalienable by the State of Louisiana. * * *
* ❖ * * * *
“Under the provisions of Act 62 of 1912 [LSA-]R.S. 9:5661, proceedings by the State of Louisiana to annul patents issued by the State must be brought within six years of the issuance of the patent, or, in the case of patents issued prior to 1912, within six years of the passage of Act 62. The instant case does not involve the validity of the patent issued John Beckwith in 1874 but rather, the? extent of the land, conveyed by the patent. The patent by its terms covers a large quantity of swamp and marsh land, and according to the acreage described would include the bed of Grand Bay. As to the swamp and marsh lands the patent stands. However, the patent cannot be said to have conveyed property that was insusceptible of private ownership. There is nothing in Act 62 of 1912 which would convert things which are insusceptible of private ownership into property that is alienable by the State. If Act 62 does so, it is only by an inference that this Court does not find in the Statute.
ij; ii
Contrary to the initial argument of the State, and as was correctly concluded by the trial judge, patent No. 1965 issued to John Beckwith in 1874 did describe, and it purported to convey, the bed of Grand Bay. The descriptions of the property sought to be transferred, as the patent recites, were “according to the official plat of the survey of said lands in the State Land Office”; and Grand Bay, as portrayed and delineated by sections on such plat, conformed with and was included in those descriptions. That being true, it is not exactly correct to say that the instant case does not involve the validity of the patent but, rather, it presents the extent of the land conveyed by the patent.
The members of the Beckwith group concede that the State at one time might have successfully urged the invalidity of the assailed patent, the Governor and Register of the State Land Office (the signing officials in 1874) not having had any specific authorization from the Legislature to execute the instrument. But they show that prior to 1921 there was no constitutional *715 prohibition respecting an alienation by the State of the bed. of a body of navigable water, including Grand Bay; and they contend that, because of the State’s inaction, any such right to attack the patent has been barred by the prescription of six years as established by the provisions of Act 62 of 1912, Section 1 of which states:
“* * * That all suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act.”
The State, countering, insists that such statute is not applicable here. In this connection it argues first that the bed of Grand Bay is classed as “sea shore” which, according to the Louisiana Statutes Annotated-Civil Code, Articles 450 and 482, constitutes “common property” available to all persons and insusceptible of private ownership. At the same time it concedes (both in brief and in oral presentation of the case), however, that prior to 1921 the Legislature had the power to change the mentioned codal or legislative declarations and to make such property alienable to individuals. In effect its position, therefore, is that the property would have been susceptible of private ownership had it not been for the mentioned codal articles; and that because of the prohibition therein contained the bed of Grand Bay was inalienable and the prescriptive statute relied on has no application.
In State v. Richardson, 140 La. 329, 72 So. 984, 986, which presented the question of whether the property there in dispute was a part of the bed of Red River (a navigable stream), this court said: “It can hardly be denied that anything which constitutes property, or an interest in property, and which possesses any value, or conceivable value, for any purpose whatever, is susceptible of private ownership, unless there be some law to the contrary. The ‘law to the contrary,’ in this instance, is said to be that which declares that the beds of navigable rivers are ‘public,’ and hence not susceptible of private ownership. * * * ” The “ ‘law to the contrary’ ” in the present litigation, as before shown, is said to be the provisions of LSA-Civil Code, Articles 450 and 482. It is not at all certain that they provide the prohibition here contended for, since the court made no reference to them in State v. Bayou Johnson Oyster Co., Limited, 130 La. 604, 58 So. 405, 410, which involved a dispute over similar tidewater bottoms, when it commented: “It may be, and probably is,, true that there is no legal impediment in the way of the state’s alienating such prop *717 erty in favor of particular individuals or corporations, save in so far as such alienations might conflict with the power vested in Congress to regulate interstate and foreign commerce; * *
But assuming for the sake of argument that the mentioned codal provisions are applicable and forbade an alienation of the property involved here, the prohibition is and could be no different, insofar as the prescriptive statute is concerned, from that found in other legislative declarations which rendered beds of navigable rivers, streams and lakes insusceptible of private ownership.
In the latter class was the bed of Duck Lake, a navigable body of water, which furnished the contest in the recent case of Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, 840 (such decision, it is fair to state, was rendered subsequent to the judgment of the district court in the instant cause). Under the authority of Act No. 97 of 1890, LSA-R.S. 38:691 et seq., the State sought to grant such bed, along with other lands, to the Atchafalaya Basin Levee District. Later, the Levee District purportedly conveyed the property to private corporations and individuals. In the dispute between the State and the private purchasers (referred to in the opinion as “Salt Domes”) the former contended that the bed of Duck Lake was sovereignty land, because of its navigable character, and hence was not covered by, and could not be granted to the Levee District under Act No. 97 of 1890. As a defense, Salt Domes pleaded the prescription of six years under the 1912 statute. The court commented in part and concluded as follows: “We do not deem it essential to consider the merits of the title claims of either the State or Salt Domes because it is perfectly apparent, from the foregoing statement of the case, that whatever right the State may have had to contest the title of Salt Domes has long since been barred by the peremption of six years provided by Act No. 62 of 1912. * * *
“By an unbroken line of jurisprudence, this Court has held that the failure of the State to institute suit to annul a patent or transfer of land by one of its sub-divisions within six years from its date, or within six years from the effective date of Act 62 of 1912 when the patent or deed had been executed prior to its passage, operates as a tacit confirmation which thereafter renders the title unassailable. State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833; Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198 and O’Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470.
“Counsel for the State acknowledge the force of these pronouncements but it is professed that they are inapplicable in this instance for the reason that, in the cited cases, the Court was dealing with lands which the State had been authorized to sell, whereas, here it is contended that the State *719 could not transfer the bed of navigable waters under Act No. 97 of 1890 as that statute sanctioned only the conveyance to the Levee District of lands properly acquired from the United States as swamp and overflowed lands and those forfeited for non-payment of taxes.
“The answer to this proposition is that, inasmuch as the bed of Duck Lake was unquestionably embraced in the transfer of vacant lands executed on May 18th 1901 by the Register of the State Land Office and the State Auditor in favor of the Atchafalaya Basin Levee District and inasmuch as this property was taken out of the public domain by conveyance of said Levee District to private parties, it is a matter of no importance whether the deed of the public officers was beyond the powers-vested in them by Act No. 97 of 1890. The transfer being an accomplished fact and the property having been acquired by private tranferees, the State was accorded six years to contest the matter. Failure to institute suit within that time constituted a ratification of the action of its officers in disposing of the property. See Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351, 358.”
In the instant case, as in the one just discussed, the bed of the navigable body of water (Grand Bay) was inalienable and not susceptible to private ownership because it was sovereignty land and certain legislative declarations (so the State contends) prevented an effective transfer thereof. However, in 1912, the Legislature, as it had a right to do, provided in a statute of repose a modification of those declarations to the extent of giving legislative recognition and sanction to any transfer of property by the State or a subdivision thereof when made in a specified form and when suit to annul it had not been timely instituted. Here, the patent was regular on its face and duly recorded, all as required by that statute; and the attack thereon was not made within the time prescribed.
Again, the State says that the Act of 1912 is not applicable to the instant patent, and was not intended to affect the bed of a navigable body of water such as Grand Bay, as is fully shown by a series of legislative acts (all adopted after the Beck-with patent was issued) commonly known as the Oyster Statutes and being Acts Nos. 106 of 1886; 52 of 1904; 189 of 1910; 54 of 1914; 139 of 1924; and 67 of 1932, LSA-R.S. 56:421 et seq. These statutes, as their titles indicate, purport to regulate the oyster industry in the State of Louisiana, and they relate to all beds and bottoms of rivers, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territorial jurisdiction of the State of Louisiana.
The Act of 1886, in Section 1, refers to all of the described property and recites: “ * * * and not heretofore sold or conveyed by special grants or by sale by this State, or by the United States to any pri *721 vate party or parties, shall continue and remain the property of the State of Louisiana, * * *.”
The Acts of 1910 and 1914, insofar as pertinent, are practically alike. Sections 1 thereof make reference to the above mentioned beds and bottoms and state that they “ * * * shall be, continue and remain the property of the State of Louisiana, except as otherwise provided * * *.” And Sections 3 of those Acts provide: “That the Conservation Commission of Louisiana shall have the power to lease any and all water bottoms and natural reefs as described in Section 1, of this act. No claims to any water bottoms by any person, firm or corporation, shall be valid or have any effect until adjudicated by a court of competent jurisdiction between the State and claimant, and said claimant shall by virtue hereof have a right of action against the State in any court of competent jurisdiction for the legal determination of the validity of his claim.” In a subsequent re-enacting statute (1932) the effect of the judgment to be rendered in the action was limited to an adjudication of the question of title.
Particularly alluding to the quoted provisions the State, to quote from the brief of its counsel, argues: “In the instant case we are faced with some apparent conflict between the provisions of a general law relating to the prescription of actions of nullity of patent and a special comprehensive law covering the whole subject of title to and the administration of the use of bodies of water bordering the Gulf of Mexico, and we submit that here the Court must find that the provisions of the special statutes, herein referred to as the Oyster Statutes, are not repealed by the general prescriptive statute, Act No. 62 of 1912, and that the provisions of the Oyster Statutes that the beds of the bodies of water of the particular class dealt with shall be, continue and remain the property of the State of Louisiana create an exception to Act No. 62 of 1912 in that the prescription does not apply to an invalid grant purporting to cover beds of a bay of the Gulf of Mexico, insofar as that grant may be said to cover such body.
******
“ * * * The legislative expression of intention that such property should be, continue and remain the property of the State of Louisiana is irreconcilable with a construction of the prescriptive statute as barring, after a period of six years, any questions as to the validity of a prior invalid grant of such property. To so construe Act 62 of 1912 would imply a repeal of the prior specific act. * * * ” This argument respecting the creation of an exception is predicated on an assumption, as is noticed, that there Í9 a conflict between the provisions of the Oyster Statutes and those of the Act of 1912; but we observe none. The recital that the described water bottoms “ * * * shall be, continue and remain the property of the State of Loui *723 siana”, which is principally relied on by counsel, has reference only to such bottoms as have not been conveyed by the State theretofore to private parties; and to them, obviously, the 1912 Act cannot have any application. If this were not true, and the recital be construed as referring also to previously disposed of property, it would be subject to a constitutional attack as divesting vested rights.
Nevertheless, all of the mentioned Oyster Statutes recognize that there might be title claims outstanding under attempted sales or grants by the State, and, with reference thereto, provision is made in Sections 3 of the 1910, 1914, and subsequent Acts for a judicial determination of those claims. And in a proceeding thus contemplated a claim, predicated on an unauthorized patent such as is involved herein, might well be decreed valid and effective as a result of the prescription of the 1912 statute, all of which tends to show that the suggested conflict does not exist.
Incidentally, another Act of 1910, being No. 258, likewise contained a declaration as to the State’s ownership of water bottoms, subject, however, to alienations to private parties theretofore made. As said in State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678, 681, “Act No. 258 of 1910 by its terms clearly manifests the legislative intention to establish a uniform and mandatory rule or system as to the ownership of the waters and beds of the bayous, lagoons, lakes, rivers, and bays within the State, where they were not under the direct ownership of any private person, firm, or corporation, and where they had not. been previously transferred by the State. * * * ” See also footnote to Humble Oil & Refining Co. v. State Mineral Board, supra.
We conclude, therefore, that John Beckwith’s patent of 1874, regular on its face and properly recorded, was tacitly confirmed and rendered unassailable by the inaction of the State and the provisions of Act No. 62 of 1912.
Under its alternative claim of derivative title, by supplemental answers the State avers that the lands in dispute herein were adjudicated to it in 1883, for unpaid taxes due by John Beckwith for the years 1881 and 1882, and that they have not been redeemed. The bed of Grand Bay, with which we are only concerned, is in Sections 17, 19, 20 and 22, Township 19 South, Range 18 East, according to the Polk survey (on which the Beckwith patent was based) as reaffirmed and reestablished by the DeArmas survey approved in 1939. However, the tax deed of 1883 (incidentally, it was cancelled subsequently by authorized State officials), as well as the supporting assessment roll of 1882, does not list any of those sections; rather it designates the property sought to be adjudicated therein by other section numbers without reference to any particular plat or survey.
In an effort to show that the lands on which the wells are located were included *725 in the tax sale the State offered the testimony of a Mr. Haynes, engineer for the Department of Public Works, who had drawn a composite map depicting several surveys consummated previous to the one of Polk and who sought to identify the property by those former surveys, notwithstanding that he never went on or near the lands. Assuming for the sake of argument that use of the older surveys was legally proper (there is no suggestion in the deed or tax roll whatever that the lands were to be located in relation to them, rather than to the then existing official plat which had been accepted and approved by the Register’s office some nine years earlier), we cannot say that the attempted identification was satisfactory and sufficiently established, particularly in view of certain admissions of the witness. For example, he testified:
“Q. But the prior surveys about which you have testified in making up this plat, which were prior to the Polk Survey, I take it, you did find many discrepancies, did you not? A. Yes, I did.
“Q. You found that in order to make up your composite picture, you had to disagree with Mr. DeArmas’ map of 1939? A. I had to disagree with everybody.”
Moreover, Mr. Haynes admitted that where land is patented according to the Polk survey and thereafter the patentee conveys it, the deed describing the section numbers without reference to any particular survey, such land should be located according to the Polk plat.
Finally, and again in the alternative, the State contends that the rights of the Beckwith group have been lost as the result of various prescriptions.
It says that since long before 1904 Grand Bay has been continuously and regularly under the supervision and control of tha State, through various agencies thereof, and that its numerous acts respecting fishing, oyster planting and harvesting, navigating and patrolling of the waters, and geophysical operations, support the prescription of 30 years acquirendi causa. The plea cannot be sustained. If for no other reason the evidence adduced is very vague, indefinite, and unsatisfactory respecting the mentioned acts and, therefore, it does not preponderate^ disclose the adverse possession requisite under LSA-Civil Code, Article 3500.
It is next said that the claim became barred in 10 and 30 years, since Act No. 189 of 1910 (an Oyster Statute which was reenacted in 1914 and 1932) made necessary the assertion of a private claim judicially and the general law, LSA-Civil Code, Articles 3544 and 3548, sets limits of 10 years for a personal action and 30 years for an action to recover an immovable. The mentioned statute, of course, provided no prescriptive period; and it is obvious that the mentioned 10-year prescription is inapplicable. Neither could the 30-year liberative prescription apply in view of the State’s fail *727 ure to establish, as above shown, the required adverse possession. See Labarre v. Rateau, 210 La. 34, 26 So.2d 279.
The last prescription pleaded is that of 10 years based on nonuser. The State theorizes that the claim of the Beckwith group amounts to no more than a mineral servitude in and to the bed of Grand Bay, since by an admission the property is subject to paramount rights of the State to the use of the waters for the regulation of fisheries, commerce and navigation, and, as a consequence, they have only the right to take oil and gas therefrom. We are not impressed with the theory. In numerous instances parcels of land are burdened with rights of passage and other kinds of uses and servitudes without otherwise impairing or affecting the ownership thereof.
While allegations are contained in the pleadings as to the names of the heirs and successors of John Beckwith and also as to the kinds and amounts of their various interests in and to the bed of Grand Bay, and some supporting evidence was furnished, the record appears inadequate to permit our pronouncing definitively with respect thereto. Therefore, the cause will be remanded for a determination of those matters and for the fixing of the proportion of the deposited royalities from the producing wells to which each such claimant is entitled.
For the reasons assigned the judgment of the district court in favor of the State of Louisiana, its agents and officials, is reversed and set aside, and there is now judgment in favor of the heirs and successors of John Beckwith (the Beckwith group) recognizing them to be the owners of the funds on deposit in the Registry of the Court, as well as of all additional funds that may hereafter be deposited, representing the one-eight royalties due under the provisions of the lease described in Article 1 of the original petition of plaintiff, the California Company, and attributable to the production from the eight wells situated in the bed of Grand Bay, in Plaquemines Parish, Louisiana, and involved in this cause. Further, it is decreed that plaintiff, the California Company, be and it is hereby authorized to continue to deposit the funds from the sources above designated into the Registry of the Court until such time as this judgment shall become final and executory, and it is relieved of all liability for the payment of the funds now or hereafter deposited herein from the sources above designated. Also, it is ordered that the cáuse be remanded to the district court for further proceedings, according to law and consistent with the views herein expressed. All costs of this suit shall be paid out of the funds deposited.