**Chester A. USRY, District Director of Internal Revenue, Appellant,**

v.

**Richard F. PRICE and May G. Price et al., Appellees.**

No. 20374.

United States Court of Appeals Fifth Circuit.

Nov. 26, 1963.

---

**658**

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., New Orleans, La., Robert J. Golten, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for appellant.

Donald W. Doyle, Howard J. Smith, New Orleans, La., for appellees, Doyle, Smith & Doyle, New Orleans, La., of counsel.

Before CAMERON, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal by the District Director of Internal Revenue from a summary judgment of the District Court for the Eastern District of Louisiana holding that legal expenses incurred by the appellees, hereinafter referred to as the taxpayers, in a concursus proceeding [1] brought by the California Company, were deductible under § 212 of the Internal Revenue Code of 1954.[2]

Appellant contends that the expenses were incurred in defense of title to land

[1]. A concursus action is in the nature of an interpleader action. The statute provides:

LSA–Rev.Stat. 13:4811. Deposit in registry of court by third persons of money claimed by two or more persons. "Whenever any person, firm, partnership, corporation, or association of persons is in possession of any money, which is claimed by two or more persons, or upon which two or more persons are claiming a lien or privilege, then such person, firm, partnership, corporation, or association of persons holding the money, may deposit it in the registry of the district court having jurisdiction, and shall thereafter be relieved of all liability for the payment of the money on complying with the requirements set out in R.S. 13:4811 through 13:4817."

2. Applicable statutes and regulations:
SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
"(1) for the production or collection of income;
"(2) for the management, conservation, or maintenance of property held for the production of income; or

"(3) in connection with the determination, collection, or refund of any tax."
(26 U.S.C.1958 ed., Sec. 212)
SEC. 263. CAPITAL EXPENDITURES.
"(a) General rule.—No deduction shall be allowed for—
"(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.
* * * *"

* * *
(26 U.S.C.1958 ed., Sec. 263.)
Treasury Regulations on Income Tax (1954 Code):
Sec. 1.212-1. Nontrade or nonbusiness expenses.—* * *
* * *
"(k) Expenses paid or incurred in defending or perfecting title to property * * * constitute a part of the cost of the property and are not deductible expenses. * * *"
* * *
Sec. 1.263(a)-2. Examples of capital expenditures.
The following paragraphs include examples of capital expenditures:
* * *
"(c) The cost of defending or perfecting title to property."

and thus must be capitalized. Taxpayers contend that the expenses were incurred in the collection of income, or in the alternative, for the management, conservation or maintenance of property held for the production of income. We agree with the taxpayers and affirm the judgment of the court below.

Prior to 1951, the California Company acquired oil and gas leases on a piece of property in Grand Bay in Plaquemines Parish, Louisiana, from both the taxpayers, and the State of Louisiana. Both thereafter made claims to the royalties. The California Company deposited the money in court and instituted a concursus proceeding. In 1954, the Supreme Court of Louisiana [3] ruled that taxpayers were the owners of the property in question and therefore were entitled to the royalties. Three of the Louisiana Supreme Court Justices dissented. The taxpayers attempted to deduct the legal expenses there incurred, but eventually acquiesced, paid the tax and abandoned their claim that such expenses were deductible.

Subsequently, the California Company paid other funds into court which represented royalties for other wells on the same property, and filed a second concursus proceeding. In this second concursus proceeding, taxpayers pleaded res judicata as to the question of title and asserted their unqualified right to the royalties. The case was appealed to the Louisiana Supreme Court. One of the Justices who dissented in the first case, wrote the opinion in the second case, wherein the Louisiana Supreme Court held [4] that the pleas of res judicata and judicial estoppel were well taken:

"Since the issues in this case are an attempted re-hash of the issues raised and adjudicated in the first Price case, the pleas of res judicata and judicial estoppel are well founded."

Another Justice, who had dissented in the first case, stated in a concurring opinion:

"The correctness of that holding, [the former opinion holding that title was in the taxpayers] however, is not now before us, for in this case we are called upon only to review the correctness of a judgment of the lower court sustaining a plea of res judicata."

In every case where income is derived from the land one may find, lurking somewhere in the background, a question of title to the land. Entitlement to income derived directly from the land is directly dependent upon title to the land from which the income was derived. In that broad general sense all income from real estate involves a real estate title. In this case it is not our province to adjudicate the issue of title, but to decide whether such issue has been adjudicated and settled; and if so, at what time. In the first concursus proceeding there was a real, actual and live title dispute; and the issue was carried all the way to the Louisiana Supreme Court for decision. That court settled the title question—or at least they say they did. The last opinion of the Supreme Court, following an appeal from the decision in the second concursus proceeding, positively states that the first decision settled the question of title, and that the matter was res judicata when the second opinion was rendered. Anything further, said the Supreme Court of Louisiana, would be a "re-hash" of issues decided in the first case. Under the facts and in the circumstances of this case there can be no higher authority as to when the title to the land in question was finally adjudicated than the decision of the Supreme Court of the State of Louisiana. We should not, and indeed we cannot, undertake a revision of the decision wherein the highest court of Louisiana has held that title was in the taxpayers; and when again called upon, forcefully stated that

3. California Co. v. Price, 225 La. 706, 74

4. California Co. v. Price, et al., 234 La. 338, 99 So.2d 743.

the issue had already been decided. We conclude, therefore, that the realities of the case do not permit the conclusion that a title question was involved in the second proceeding. All that was decided in the second proceeding was that the taxpayers were entitled to the funds involved, not because they had issues as to their title adjudicated in the second proceeding, but for the very cogent, plain and unequivocal reason that the issue of title had already been adjudicated, and therefore, the money derived from the land belonged to them. It is clear, therefore, that taxpayers' title to the property was not threatened and was not at stake in the second concursus proceeding. However, the accumulated royalties were at stake. Section 4815 of the concursus statute found in Title 13 of the Louisiana Revised Statutes provides:

"The failure of anyone cited under R.S. 13:4814 to appear and answer within the time required by law, shall thereafter estop the person from claiming the money."

The State's highest Court has said in effect that the taxpayers did not need to defend their title the second time. The State's Legislature has said that taxpayers must timely prosecute their claim to the money deposited in the court in the concursus proceeding. It is clear to us that taxpayers were doing the latter. Legal expenses incurred in such activities are deductible under § 212 of the Internal Revenue Code of 1954: See Hochschild v. Commissioner, 161 F.2d 817 (2 Cir. 1947); and Rassenfoss v. Commissioner, 158 F.2d 764 (7 Cir. 1946).

We have added little to what was said by the distinguished trial judge in the very clear and logical opinion written by him and reported in D.C., 209 F.Supp. 660. We fully concur in the result reached.

The judgment is affirmed.

WISDOM, Circuit Judge (dissenting).

A dog is entitled to one good bite, but only one bite. The Government too is entitled to one good tax bite—only one when a taxpayer incurs legal expenses in defending his title to property. That is the effect of the majority's holding in this case. With respectful deference to the views of my brother judges, I dissent.

I agree that here it is not the "province" of this Court "to adjudicate the issue of title"; to decide "at what time" title was "adjudicated and settled"; to question the "authority" of the Supreme Court of Louisiana to decide "when the title to the land in question was finally adjudicated"; to "undertake a revision of the decision wherein the highest court of Louisiana has held that title was in the taxpayer." But straw men fall down at a sneeze.

The question for decision is whether the legal fees incurred in the Price No. 2 suit were paid to protect the taxpayers' rights to the oil-producing property in Grand Bay. If so, for tax purposes, the fees must be treated as part of such property and, therefore, are not deductible as a business expense. It is immaterial that in the second suit the State's claim of ownership of the property was denied because of the judgment in the first suit. As the majority opinion of the Louisiana Supreme Court in Price No. 2 recognized:

"In this [second] suit the State again claims title * * *." 99 So. 2d at 746.

If title had not been at issue in Price No. 2 the Louisiana Supreme Court could not have applied the principles of res judicata and collateral estoppel.

The majority's decision that title was not at issue in Price No. 2, because it was settled in Price No. 1, comes close to being a quibble over the word "title". It disregards the letter and the rationale of Sections 212 and 263 of the Code and Regulation 1.212(k).

The statute does not use the word "title". "Title" has no importance in itself. It has a tax importance here only because of the "general rule" expressed in Section 263: expenditures which "increase the value of [the] property" are capital outlays. The regulations illus-

trate this principle with the example, "Expenses paid or incurred in defending or perfecting title to property", by getting rid of a cloud on a title, increase the value of the property. 26 U.S.C.A. § 263; Reg. 1.212–1, 1.263(a)–2. They are not "ordinary and necessary" expenses incident to the current production of income, such as repairs to property.[1] Section 212, 26 U.S.C.A. § 212. They are extraordinary expenses which add to the capital value in a permanent rather than a transitory way. The meaning of the regulation, therefore, is that fees spent on a lawsuit are capital expenditures when the taxpayer's title or right to property is so substantially involved that a judgment in favor of the taxpayer will materially increase the marketable value of the property.[2] Thus, this Court said in Jones' Estate v. Commission, 5 Cir. 1942, 127 F.2d 231, 232:

> "The gist of the decisions in the vast majority of the cases involving the question has been that *all sums expended toward the acquisition, protection, or preservation of title to property from or by means of which income is intended to be produced are capital expenditures*. We think these authorities truly speak the law * * *. To the extent, if any, that the decision of this court in Bliss v. Commissioner, 5 Cir., 57 F.2d 984, is in conflict herewith, it is overruled. ¶ It is immaterial that this petitioner was required to defend the title long after the property was first acquired, and at a time when he reasonably might have expected to

incur no additional title expense. * * * It is a contest involving the ownership of the property itself, and the title to property held for profit is a capital asset."

An expenditure which maintains the asset and is primarily concerned with the conservation of the stream of income coming forth from the capital asset should be treated as a deductible expense. Judge Tuttle, dissenting in Campbell v. Fields, 5 Cir. 1956, 229 F.2d 197, 203, succinctly states the general criteria:

> "Expenditures that create or add to assets in a permanent rather than transitory way, are generally considered capital expenditures. Those that are made as a necessary incident to the current production of income or keeping in repair of a physical property, are in the nature of expenses and are thus deductible." 229 F.2d at 204.

Allen v. Selig, 5 Cir. 1952, 200 F.2d 487 and Campbell v. Fields, 5 Cir. 1956, 229 F.2d. 197, follow the rationale of Bingham's Trust v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670. The expenditures in those cases were conservatory rather than additive in nature.

In litigation affecting title, the merits of the contentions do not affect the character of the expenses incurred in disposing of the contentions. In Safety Tube Corp. v. Commissioner, 6 Cir. 1948, 168 F.2d 787, a taxpayer defended an action challenging its title to a patent and to the right to receive royalties un-

---

1. "In determining whether an expenditure is a capital one or is chargeable against operating income, it is necessary to bear in mind the purpose for which the expenditure was made. To repair is to restore to a sound state or to amend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was ac-

quired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable for a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings." Illinois Merchants Trust Co., 1926, 4 B.T.A. 103, 106.

2. See Brookes, Litigation Expenses and the Income Tax, 12 Tax L.Rev. 241 (1957).

der the patent. The legal expenses were found to be in "defense or protection of title", although the complaint was dismissed for failure to state a cause of action. In that case the taxpayer contended that title was only incidental to the main claim for an amount representing income. The Court held, *"The gist of the controversy is the right to the asset which produced the income"*. Similarly, the gist of the controversy over Grand Bay is the right to property producing the oil income, although the taxpayers contend that in the concursus proceeding they were claiming only income funds, a position, incidentally, wholly inconsistent with their position in both Price No. 1 and Price No. 2.

I see no reason whatever for distinguishing between the legal fees paid for the first suit and the legal fees paid for the second suit. Both actions were in the form of a concursus (interpleader) proceeding. In each case, although the collection of money was at issue, the thrust of the action was the determination of rights in the property producing the royalties. In both cases the title question was central and determinative of the future rights to the oil which would continue to flow indefinitely to the owner of the title. Judgment for the taxpayer in the first suit undoubtedly added to the market value of the property; the legal fees in Price No. 1 were therefore capital outlays. But the first decision created new doubts and left untouched clouds on the title which were not dissolved until the final judgment in Price No. 2.

Price No. 2 was no summer cirrus haze. It was a September hurricane from the Gulf. Any time, first, second, third, or other time a sovereign State asserts ownership in its courts to property to which an individual also asserts ownership, it is a fair inference that the litigation alone is such a cloud on the title as to affect drastically the value of the property. That goes double when the claim of the State is to the bed of a navigable arm of the sea. The district court considered Price No. 2 "frivolous",

for reasons I find inexplicable, except for the court's stated "inclination * * * to apply * * * a rule of equity"—a worthy thought, but, in a tax case, likely only to incline the court to the wrong result under statutes unconcerned with the equities in individual cases. The Louisiana Supreme Court did not consider it frivolous. The basic issue, one of major importance to Louisiana, was whether the bed of a navigable arm of the sea is susceptible of private ownership. Millions and millions of barrels of oil are involved. Price No. 1 was decided on rehearing by a four to three court. Justices Hamiter and Moise joined in Justice McCaleb's opinion for the Court. Justice Le Blanc wrote a concurring opinion. Chief Justice Fournet and Justices Ponder and Hawthorne dissented, and each wrote a dissenting opinion. The Court held Price No. 2 under advisement for almost a year before deciding in favor of Price by a five to two decision. Chief Justice Fournet again wrote a strong dissenting opinion. Justice Simon dissented in an individual opinion. At the time, there were then serving on the Court only two justices who were with the majority on the first decision. They were joined by two of the dissenting justices who, without changing their views on the basic issue, concluded that on principles of res judicata and collateral estoppel Price No. 1 was controlling. With great respect for the Louisiana Supreme Court, I must say that Law is not so predictable, with that court as with any court, that the change in personnel was not an additional factor to consider in determining the blackness of the cloud on the taxpayers' title.

Turning now to the merits of Price No. 2, I find that the State made serious contentions which might have destroyed the taxpayers' title. (1) Chief Justice Fournet pointed out that "whether [the Prices' ancestor in title] ever secured a *legal* patent has never been considered by [the Louisiana Supreme Court] inasmuch as the only matter for determination in a concursus proceeding is a prima

facie showing of right to disputed funds deposited in the court". (2) The decree in Price No. 1 did not in specific terms vest title in the taxpayers, but recognized their ownership only in the funds from the *seven wells in question.* LSA–R.S. 13:4202 requires that "[a]ll final judgments of * * * the supreme court affecting the title to immovable property shall particularly describe the property thereby affected." There was a question, therefore, whether title could be conclusively determined in Louisiana in view of R.S. 13:4202, without recourse to the statutory procedures set forth in L.R.S. 13:5061–5063. (3) Chief Justice Fournet argued strongly that although the first judgment was final and definitive as to the *funds* involved in the concursus, it could not have the force of *res judicata* as to *title.* (4) Finally, the State contended that the concursus should be remanded to the district court with orders to hold the funds in status quo pending the outcome of a third action. This third suit was an action by the Attorney General of Louisiana to decide, once and for all, whether Grand Bay, as a navigable arm of the sea, is susceptible of private ownership. The Attorney General advised the Louisiana Supreme Court that he had "New Facts and New Law * * * Never brought to light in the previous case and Never considered by [the Supreme Court] * * * as well as * * * [proof] which clearly shows the patent was void from its inception". 99 So.2d at 755.

There is not the slightest doubt that the State of Louisiana was just as determined in Price No. 2 as it was in Price No. 1, that the State owns Grand Bay; and it had good reason to feel that it had an excellent chance to succeed in the second litigation. There is also not the slightest doubt that the validity of the taxpayers' title was at issue in Price No. 2. The Supreme Court said it was. The California Company acted on this belief. California invoked the second concursus because the earlier decision had not settled the title, at least to the point of the company's being willing to risk the payment to the taxpayers of royalties on the new wells. There is not the slightest doubt that the value of the taxpayers' title increased enormously after Price No. 2 was decided.

The majority's conclusion, that the taxpayers really perfected their title in Price No. 1 might, I suppose, although I am not sure, have some significance in a title examination. It is irrelevant in a tax case when the question is whether legal fees paid for defending title in Price No. 2 were capital expenditures. The happenstance that the taxpayers' defense of their title in Price No. 2 took the form of pleading res judicata rather than some other defense cannot transform the title attack into a deductible Christmas party.