YARRUT, Judge.
This is a suit to remove “clouds” from the title of certain “water bottoms” forming the beds of Black Bay and Breton Sound, bodies of water on the east- coast of Louisiana, to which Plaintiffs claim ownership. The “clouds” consist of recorded instruments constituting Lease No. 195 granted by the State of Louisiana and presently owned by Gulf Oil Corporation and the Estate of William G. Helis.
Defendants are the Mineral Board of the State of Louisiana, Gulf Oil Corporation, the Estate of William G. Helis and five partners in that Estate. Defendants moved for a summary judgment on two grounds: (1) That the property involved was adjudicated to the State for non-payment of 1931 taxes, and that any purported redemption was invalid because it was in contravention of Article 4, § 2, of the 1921 Louisiana Constitution, which prohibits the State from alienating the fee bed of any navigable waterway; and (2) that the first four links in Plaintiffs’ title are fatally defective.
The Trial Judge considered only the second ground and granted summary judgment in favor of Defendants. From this judgment Plaintiffs have taken this appeal.
*646 The first four links in Plaintiffs’ title are as follows: (1) A transfer dated April 2, 1895, by the State of Louisiana to the Lake Borgne Levee District; (2) a transfer dated July 27, 1910, by the State of Louisiana to the same Levee District; (3) Patent No. 59, which recites that the Plaquemines Land Company acquired the property from the State of Louisiana and the Lake Borgne Levee District on September 20, 1911; and (4) Patent No. 60,, which recites the same facts as Patent No. 59, but with respect to a different portion of the property.
Defendants contend, and the Trial Judge agreed, that Links Nos. 1 and 2 were nullities. However, in doing so Defendants relied on Coastal States Gas Producing Co. v. State Mineral Bd., La.App., 199 So.2d 554. The cited case involved an act of sale executed by the Parish Treasurer to private individuals. The grantees relied on Act 62 of 1912, which provides, inter alia:
“* * * That all suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act.”
The Court held that because the transfer involved was not a patent issued by the State and signed by both the Governor of the State and the Register of the State Land Office, or a transfer by a political subdivision of the State, that the prescriptive period did not apply. However, in the cited case, transfer by the State was to private individuals whereas in the instant case the transfer was by a subdivision of the State to private interests. Therefore, the facts in the instant case are similar to those in Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, which involved a transfer by a political subdivision, the Atchafalaya Levee District, to private parties. When the transfer to the Levee District by the State was questioned, as in the instant case, the Court held:
“The answer to this proposition is that, inasmuch as the bed of Duck Lake was unquestionably embraced in the transfer of vacant lands executed on May 18th, 1901 by the Register of the State Land Office and the State Auditor in favor of the Atchafalaya Basin Levee District and inasmuch as this property was taken out of the public domain by conveyance of said Levee District to private parties, it is a matter of no importance whether the deed of the public officers was beyond the powers vested in them by Act No. 97 of 1890. The transfer being an accomplished fact and the property having been acquired by private transferees, the State was accorded six years to contest the matter. Failure to institute suit within that time constituted a ratification of the action of its officers in disposing of the property. See Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351, 358.”
In this case one of the transfers was by the Register of the State Land Office to the Lake Borgne Levee District, and the other by the State Auditor to the Lake Borgne Levee District, clearly bringing them within the purview of the Humble Oil & Refining Co. v. State Mineral Board, supra. However, we do agree that Links Nos. 3 and 4 are fatally defective. In 1910 two Acts were passed concerning the State’s waterways. One was Act 189, an “Oyster Statute”, which provided, inter alia:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all beds and bottoms of rivers, bav • ous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the. *647 Gulf of Mexico, and that part of the Gulf of Mexico within the jurisdiction of the State of Louisiana, including all natural oyster reefs, and all oyster and other shell fish growing thereon shall be, continue and remain the property of the State of Louisiana, * * *.
“No grant, sale or conveyance of the lands forming the bottoms of said bodies or streams of water, shall hereafter be made by the Register of the State Land Office by any other official, or by any subordinate political corporation.”
The other was Act No. 258, which provided, inter alia:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm or corporation are hereby declared to be the property of the State. * * *”
The Trial Judge correctly decided that the water bottoms here involved were, and are the, beds of Black Bay and Breton Sound, being bays and sounds “bordering or connected with the Gulf of Mexico” within the purview of the “Oyster Statute” quoted above. He also decided that the “Oyster Statute” effectively prevented the transfer by the State of Louisiana and the Lake Borgne Levee District to Plaque-mines Land Company, and this nullity was not cured by Act 62 of 1912.
As we fully agree with the Trial Judge, we adopt, as our own, the Trial Judge’s “Reasons for Judgment”, to-wit:
« * * *
“Inasmuch as the defendants rely upon the ‘Oyster Statutes’, in part, in support of their position as hereafter discussed, and since these statutes were discussed in the case of California Co. v. Price, 225 La. 706, 74 So.2d 1, upon which plaintiffs rely almost exclusively, it is necessary to consider what was said in that case in the context of the facts there involved.
“In the Price case the Court was there concerned with a patent dated November 4, 1874, and as noted in that decision, the series of statutes referred to as the ‘Oyster Statutes’ only commenced with Act No. 106 of 1886, which was over ten years after the issuance of the patent involved in the Price case. It is thus apparent that nothing contained in the ‘Oyster Statutes’ could affect the rights of those holding under that patent, and as will be seen this was noted by the Court. On the other hand, and in the case at bar, Act 189 of 1910 and all of the provisions above quoted therefrom, were in force and effect at the time of the purported transfer from the State to the Levee District, and, at the time the Levee District purported to convey to Plaquemines Land Company.
“In the Price case the Court acknowledged that Act 54 of 1914, which was a further ‘Oyster Statute’, also contained the same provisions as those above quoted from Act 189 of 1910, without material change. The discussion in the Price case of Act 189 of 1910, and, Act 54 of 1914, was with reference to their relationship to Act 62 of 1912.
“The argument advanced by the State in the Price case, and, predicated upon the ‘Oyster Statutes’, was based on the proposition that Act 62 of 1912 was a ‘general law relating to the prescription of actions of nullity of (a) patent,’ whereas the ‘Oyster Statutes’ were ‘a special comprehensive law covering the whole subject of title to and the administration of the use of bodies of water bordering the Gulf of Mexico.’ Based thereon, the State argued that the ‘Oyster Statutes,’ being ‘special statutes’ they thereby constituted ‘an exception of Act No. 62 of 1912 in that the prescription does not apply to an invalid grant purporting to cover beds of a bay * * *’ In *648 the course of rejecting this argument, the Court said, at p.7:
“ * * This argument respecting the creation of an exception is predicated on art assumption, as is noticed, that there is a conflict between the provisions of the Oyster Statutes and those of the Act of 1912; but we observe none. The recital that the described water bottoms ‘* * * shall be, continue and remain the property of the State of Louisiana’, which is principally relied on by counsel, has reference only to such bottoms as have not been conveyed by the State theretofore to private parties; and to them, obviously, the 1912 Act cannot have any application. If this were not true, and the recital be construed as referring also to previously disposed of property, it would be subject to a constitutional attack as divesting vested rights.
“From the foregoing extract, and particularly the emphasized portions thereof, the defendants point out that the Court held:
“(1) The ‘Oyster Statutes’ were prospective in operation and only applied to water bottoms ‘as have not been conveyed by the State theretofore to private parties,’
“(2) But in its prospective application and as to property thereafter conveyed to private parties, then as ‘to them, obviously, the (Act 62 of) 1912 Act cannot have any application,’ and
“(3) If the ‘Oyster Statutes’ be construed as referring also to previously disposed of property, it would be subject to a constitutional attack as divesting vested rights.’
“Of the foregoing, the defendants place special emphasis on the statement by the Court to the effect that: ‘the 1912 Act cannot have any application’ as respects lands conveyed after the enactment, and subject to, Act 189 of 1910, and ‘Oyster Statutes.’
“The next proposition advanced by defendants in support of their motion is predicated upon that provision of Act 189 of 1910, Section 1, which provided that the water bottoms ‘shall be, continue and remain the property of the State of Louisiana,’ and also the provisions of Act 258 of 1910. Thus defendants state that (in the alternative) if the Levee District in fact acquired title to these water bottoms as a result of the transfer from the State to the Levee District, nevertheless such transfer would have been revoked as a result of the provisions of the two statutes above noted.
“While the Supreme Court has never specifically interpreted the statutory declaration of Section 1 of Act 189 to the effect that such water bottoms ‘shall be, continue and remain the property of the State of Louisiana,’ it has had occasion to consider the similar provisions of Act 258 of 1910, in the case of State v. Board of Com’rs of Caddo Levee Dist., 188 La. 1, 175 So. 678, where the Court said with reference to Act 258, at page 679:
“ ‘Act No. 258 of 1910 is composed of two sections. The second section refers only to the waters and beds of navigable streams; hence it is not pertinent to the issue involved in this case. The first section declares: ‘That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm, or corporation are hereby declared to be the property of the State. There shall never be any charge assessed against any person, firm or corporation for the use of the waters of the State for municipal, agricultural or domestic purposes.’ That section plainly refers to nonnavigable bodies of water as well as navigable bodies of water, and is the statutory provision on which plaintiff’s suit is predicated.
“ ‘The clause in the first section of Act No. 258 of 1910, excepting from its provisions the waters and beds of bayous, lagoons, lakes, and bays under the direct ownership of any person, firm, or corporation, clearly refers to private owners *649 of such lands and not to the several levee boards, which are merely state agencies, whose rights, privileges, and obligations are at all times under legislative control iji * ‡ >
“and at page 681:
“ ‘Act No. 258 of 1910 covers the whole subject matter of the waters and beds of bayous, lagoons, lakes, bays, and rivers, the ownership of which had not theretofore been transferred or conveyed in the manner required by law * * *’
“ ‘Act No. 258 of 1910 by its terms clearly manifests the legislative intention to establish a uniform and mandatory rule or system as to the ownership of the waters and beds of the bayous, lagoons, lakes, rivers, and bays within the State, where they were not under the direct ownership of any private person, firm, or corporation, * * *.’
“and again at page 681:
“ ‘When the Legislature by Act 258 of 1910 declared that the State owned the waters and beds of such streams as Black Bayou, and, so far as concerns the defendant levee board, excepted from its provisions only those waters and beds where the lands they traverse had been transferred by the State, it intended unequivocally to retake title to the beds of Black Bayou and similar streams, where they had not been conveyed to the several levee boards, and where the rights of third parties had not intervened. Any other construction would stamp Act No. 258 of 1910 as without meaning and as useless legislation.’
“The last above quoted extract specifically provides that where the beds of bodies of water had been transferred by the State to a Levee Board, but the rights of third persons had not intervened, then the effect of Act 258 of 1910 was to ‘unequivocally * * * retake title to the beds’ of such bodies of water even though transferred to the Levee Board but where there had been no further transfer by the Levee Board to third parties. From the language of the above case, it is clear that the same reasoning and interpretation there applied to Act 258 of 1910, would be equally applicable to Section 1 of Act 189 of 1910. Plaintiffs do not show that there was any transfer of this property out of the Levee District, until the purported patents (Links Nos. 3 and 4), which are dated in 1911.
“Accordingly, if the title to any of the property here involved was, as a matter of law, transferred to the Levee District, yet the foregoing case shows that Acts 189 and 258 of 1910 would have operated to ‘retake title’ thereto and reinvest it in the State. Hence, the Levee District had no title to the property here involved at the date of the two purported patents (Links Nos. 3 and 4), and therefore such purported patents could convey no title to Plaquemines Land Company.
“The next contention advanced by the defendants (in the alternative) is to the effect that Act 189 of 1910 and Act 258 of 1910 rendered the two patents granted in 1911 to the Plaquemines Land Company absolute nullities. They point specifically to that provision of Section 1 of Act 189 of 1910 to the effect that no sale or conveyance of water bottoms ‘shall hereafter be made * * * by any other official, or by any subordinate political corporation.’ It is quite apparent, for the reasons above stated in connection with their first contention, that the two patents were in fact in contravention of the prohibition of Act 189 of 1910, and would therefore convey no title to the water bottoms, if the Levee District in fact had title at the time of the issuance of the patents.
“This Court can find no fault with the foregoing arguments of defendants, and the plaintiffs have suggested none. Such being the case, the two patents in favor of the Plaquemines Land Company were absolute nullities and no title to the property vested by virtue thereof upon their issuance, and, they were not rendered valid by the provisions of Act 62 of 1912. Therefore, the Court finds that there is no genuine issue *650 as to material fact in this case, and for the reasons hereinabove set forth defendants are entitled to judgment as prayed for as a matter of law in accordance with the provisions of Code of Civil Procedure Article 966. * * * ”
Accordingly, the judgment appealed from is affirmed; Plaintiffs to pay all costs in both courts.
Affirmed.