SAMUEL, Judge.
Plaintiffs filed this action, which they style petitory, to regain possession of two tracts of land located in the bed of Quar *485 antine Bay, a navigable body of water off the coast of Plaquemines Parish. They allege the State of Louisiana sold the property in 1905 and they acquired by mesne conveyances. They further allege the State exercised rights of ownership adverse to theirs by granting a mineral lease to M. Hession in 1928. This instrument, generally known as State Lease 195, covers water bottoms off the coast of Plaque-mines Parish east of the Mississippi River, including the tracts in Quarantine Bay plaintiffs now claim they own. After several assignments thereof, Gulf Oil Corporation ultimately became the mineral lessee, and plaintiffs aver Gulf is now exploring for minerals thereon.
The suit was filed in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines pursuant to LSA-R.S. 56:424 (Act 67 of 1932), the current “Oyster Statute”. Inter alia, the act grants a claimant alleging ownership of a water bottom suitable for oyster culture to have the validity of his claim against the State judicially determined without first obtaining legislative permission to sue the State. Gulf intervened and later, in a supplemental petition, was made a defendant by plaintiffs.
Plaintiffs set out their chain of title in the pleadings, but it is only these first four links we need consider: (1) sale by the State to the Grand Prairie Levee District in 1905; (2) sheriff’s sale (conducted on the authority of the Board of Commissioners for the Grand Prairie Levee District) by the Grand Prairie Levee District to Millard C. Baker, dated October 29, 1910; (3) Patent No. 27 by the State of Louisiana to Millard C. Baker on March 4, 1911; and (4) Patent No. 24 by the State of Louisiana to Millard C. Baker on March 4, 1911.
Defendants filed numerous exceptions which require no discussion in view of the conclusion reached herein. Then, without' filing an answer, they moved for summary judgment, asserting that, on the uncontro-verted facts, the first four links in plaintiffs’ title were nullities because the State and/or the Grand Prairie Levee District were prohibited by the legislature from selling the property at issue. Alternatively, they plead that had the State and/or the Levee District executed valid transfers, nonetheless the property was reacquired in 1917 when it was adjudicated to the State for unpaid 1916 taxes. Defendants further argue a certificate of redemption issued by the State in 1938 to the tax debtor was a void conveyance because it contravenes that portion of Louisiana Constitution Article 4, Section 2 of 1921 which forbids the sale of state-owned beds of navigable streams.
The trial court granted the motion for summary judgment, citing as authority the opinion of this court in Stevens v. State Mineral Board, La.App., 221 So.2d 645. While the instant case was under submission here, the Supreme Court of Louisiana reversed the result we reached in Stevens (Stevens v. State Mineral Board, 255 La. 857, 233 So.2d 542). In that case we held the trial court properly granted a motion for summary judgment. However, the Supreme Court concluded summary judgment was improper because there were unresolved issues of fact, warranting a remand for further proceedings in the district court.
In Stevens we held plaintiffs’ title was defective because various transfers by the State were nullities and the legal principles upon which our conclusion was based are also applicable in the instant case. Thus, we must determine whether there exists herein the same disputed issues of material fact as the Supreme Court found in Stevens. With this view in mind we summarize the Stevens litigation, as we understand it.
In that case plaintiffs filed suit to remove clouds from title to property now forming part of the beds of Black Bay and Breton Sound, coastal waterways. The cloud complained of was State Lease 195, the same instrument plaintiffs herein as *486 sert is an adverse claim of ownership by the State. From maps and plats annexed to defendants’ motion for summary judgment, we concluded Black Bay and Breton Sound were navigable waterways bordering on or connected with the Gulf of Mexico and the property disputed formed part of the beds thereof. In Stevens two links in plaintiffs’ title were patents from the State to Plaquemines Land Company granted in 1911. We held both conveyances were nullities because legislation enacted in 1910 expressly prohibited these transfers, i. e., Act 189 forbade the sale of navigable water bottoms owned by the State that bordered on or were connected with the Gulf of Mexico and Act 258 leveled the same prohibition against the sale of any water bottoms within the borders of the State.
In reversing this result, the Supreme Court did not pass on the validity of our conclusion quo ad the patents. It simply held that the summary judgment had .been improvidently granted because there were “genuine disputed issues of fact involved in this case”, one being “ ‘whether the property claimed was land or water bottoms, the present status of the property claimed as land or water bottoms, and the effect of .the doctrine of Miami Corporation v. State, 186 La. 784, 173 So. 315, in light of the fact determined.’ ” (Miami holds that title to land area covered by navigable water through natural causes of subsidence and erosion reverts to the State once the natural phenomenon occurs.)
Defendants further urged in Stevens that the property had been adjudicated to the State for nonpayment of 1931 taxes, and became unredeemable property because La.Const. Art. 4, § 2 prohibited the State from alienating the fee bed of any navigable waterway. Having affirmed the granting of summary judgment on another ground, we did not .consider this argument. The Supreme Court did. It found conflicting dates as to the time of the issuance of the certificate of redemption and concluded the discrepancies precluded, consideration of summary judgment on this ground because, again, the facts were disputed.
Thus, we must determine whether summary judgment lies on the ground that the transfers by the State and/or the Grand Prairie Levee District are nullities on the uncontroverted facts material to the legality of these transfers. At the outset, we note the significant distinction between this case and Stevens-, here the plaintiffs judicially admit the tracts they claim are located in the bed of a navigable bay that has been navigable since Louisiana was admitted to the Union in 1812.
While earlier pleadings do not clarify the character of the property as to whether it is lands or water bottoms, all confusion is removed by the Second Amended and Supplemental Petition. The preamble states in part:
“The second amended and supplemental petition of * * * respectfully supplement and amend their original petition herein in the following respects, said second amended and supplemental petition is herein filed as such in lieu and instead and superceding all prior pleadings heretofore filed by petitioner is [in] this cause, * * *. (Emphasis ours).
Allegation 3 reads:
“The tracts of land described in Paragraph 1 of this petition lie within the body of water called and designated as ‘Quarantine Bay’ and was navigable in 1812 and also at present, and the State of Louisiana, by virtue of its inherent sovereignty and in view of the navigable character of such bay, acquired title to the bed thereof when it was admitted to the Union on an equal footing with the original thirteen states.”
By judicially admitting the land over which they claim ownership is part of the bed of navigable waters, plaintiffs bring this action squarely within the Stevens holding of this court. A map annexed to defendants’ motion for summary judgment *487 clearly shows Quarantine Bay “borders on or is connected with the Gulf of Mexico”. From these undisputed facts, we conclude the first four links in plaintiffs’ chain of title are nullities and the State never divested itself of ownership. As there is no issue as to any material fact necessary to reach this conclusion, and as the conclusion forecloses plaintiffs’ claim, summary judgment is proper under LSA-C.C.P. Art. 966.
The first link in plaintiffs’ title is a transfer of land by the State to the Grand Prairie Levee District under the provision of Act 27 of 1904. That act authorized transfer of certain state-owned lands to the Grand Prairie Levee District for the purpose of assisting the district in constructing a system of levees. Act 52 of that same year (an Oyster Statute) provided in part:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all the beds and bottoms of the rivers, bayous, lagoons, lakes, bays, sounds and inlets bordering on or connecting with the Gulf of Mexico, * * * shall be, continue and remain the property of the State of Louisiana, * * - *. No grant, sale or conveyance of the lands forming the bottoms or beds of said bodies or streams of water, except the conditional leases and dispositions hereinafter provided for, shall hereafter be made by the Register of the State Land Office, * * Act 52 of 1904.
Thus, the 1905 conveyance, insofar as it purported to transfer land forming the bed of a navigable body of water connected with the Gulf of Mexico, was a nullity. In fact, the act authorizing the transfer (Act 27) by its own terms limits the transfer to land (see concurring opinion in Stevens, 221 So.2d 645, 650).
The second link is a sheriff’s sale dated October 29, 1910 under which (quoting from the act) “* * * Frank C. Meyers, Sheriff of the Parish of Plaquemines, by virtue of and in obedience to, an order of sale to me directed by the Board of Commissioners for the Grand Prairie Levee District and in conformity with act 215 of 1908 * * *” sold the property to Millard C. Baker. Even had title vested in the Grand Prairie Levee District in 1905, after passage of Act 215 of 1908, no levee district had power or authority to transfer lands to private owners; a patent had to be issued by the State of Louisiana to effect prospective sales of District lands.
Thus it is apparent the Board of Commissioners of the Grand Prairie Levee District had no authority to direct the Sheriff of Plaquemines Parish to sell this property to a private owner after passage of Act 215 of 1908.
Links 3 and 4 in plaintiffs’ title are patents issued by the State in which the purchase by Millard C. Baker at the sheriff’s sale is acknowledged and the various properties conveyed therein, including the water bottoms at issue here, were transferred to Millard C. Baker by the State. The patents are signed by the governor and president of the levee district and meet the requirements as to form set out in Act 215 of 1908 for transfer of levee district lands. However, we cannot conclude they cure the defects in the 1910 sheriff’s sale because both contravene prohibitions relative to alienating state-owned land set forth in two legislative acts of 1910.
Inter alia, Act 189 of 1910 provides:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all beds and bottoms of rivers, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico, and that part of the Gulf of Mexico within the jurisdiction of the State of Louisiana, including all natural oyster reefs, and all oyster and other shell fish growing thereon shall be, continue and remain the property of the State of Louisiana, * * *.
No grant, sale or conveyance of the lands forming the bottoms of said bodies or streams of water, shall hereafter be made by the Register of the State Land *488 Office, by any other official, or by any subordinate political corporation.
* * * ” Act 189 of 1910.
The other was Act No. 258, which provided, inter alia:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That the waters of and in all bayous, lagoons, lakes and bays and the beds thereof, within the borders of the State not at present under the direct ownership of any person, firm, or corporation are hereby declared to be the property of the State. * * *” Act 258 of 1910.
In Stevens, as decided by this court, we considered the effect both acts had on conveyances by the State of coastal water bottoms subsequent to their passage and held such transfers were nullities. For the reasons expressed in Stevens, including those contained in the concurring opinion, to which we adhere, we conclude the patents issued to Millard C. Baker in 1911 were absolute nullities which vested no title to the property and which were not rendered valid by Act 62 of 1912.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.