291 So.2d 807 (1974)
GULF OIL CORPORATION
v.
STATE MINERAL BOARD et al.
No. 5730.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied April 4, 1974.
Writ Granted May 31, 1974.
*808 Henican, James & Cleveland, C. Ellis Henican, New Orleans, for defendants-appellants.
Liskow & Lewis, Gene W. Lafitte, Lake Charles, for plaintiff-appellee.
William J. Guste, Jr., Atty. Gen. of La., Edward M. Carmouche, Charles Romano, Sp. Asst. Attys. Gen., for defendants-appellees.
Before BAILES, FLEMING and BRADLEY, JJ. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This is an appeal from the judgment of the trial court decreeing the State of Louisiana the owner of certain water bottoms located in Plaquemines Parish and awarding oil royalty payments therefrom to the State Mineral Board. From this judgment, adverse to their claims, Milner Realty Company, Inc. (Milner), Louis Carmadelle, Jr., and Gustave Carmadelle (collectively referred to as Carmadelle), appeal. On our finding that the judgment is correct, we affirm.
Gulf Oil Corporation, as the owner and holder of
(a) State Lease No. 195 granted by the State of Louisiana to Mr. Hession, dated February 20, 1928;
(b) Mineral lease granted by Milner to Robert J. Chauvin, dated October 31, 1962; and
(c) Mineral lease granted by Carmadelle to Robert J. Chauvin, dated October 31, 1962,
and after having completed three producing oil wells on the leased property described as the SW ¼ of Section 26, T.19, N, R.18 E, filed this concursus proceedings to have it judicially determined who, of the adverse claimants was entitled to the royalty payments. Gulf named and cited as adverse claimants to these payments the State Mineral Board and the Register of the State Land Office, Milner and Carmadelle.
The instant case is almost identical in facts and law to the case of Winkler v. State, La.App., 239 So.2d 484. While Winkler was styled a petitory action, this court therein had before it the identical issue as is presented herein, i. e., whether the water bottom was owned by the individual claimants or by the State of Louisiana. We find that the holding in Winkler is dispositive of the principal issues raised herein.
Appellants, Milner and Carmadelle, base their ownership to the property in question on the same chain of title as that used in Winkler. The chain can be summarized as follows: (1) sale by the State to the Grand Prairie Levee District in 1905; (2) sheriff's sale (conducted on the authority of the Board of Commissioners for the Grand Prairie Levee District) by the Grand Prairie Levee District to Millard C. Baker, dated October 29, 1910; (3) Patent No. 104 by the State of Louisiana to Millard C. Baker on March 4, 1911; and several later conveyances leading to the acquisition by the present claimants.
The State contends that the property is under water forming part of the water bottom of a navigable body of water and that any alleged conveyance of such property would be an absolute nullity. Act 189 of 1910 forbade the sale of water bottoms *809 owned by the State that bordered on or were connected with the Gulf of Mexico and Act 258 of the same year imposed the prohibition on the sale of any water bottoms within the borders of the State.
Despite the navigability of the water bottoms which make up this property, the appellants rely on their chain of title and LSA-R.S. 9:5661 to the effect that the State's failure to dispute the issuance of the State patent to Millard C. Baker within six years after its issuance made the patent unimpeachable.
We agree with the Winkler decision that the first two links in the appellants' title are fatally defective.
Speaking for this court in the Winkler case, Judge Samuel said:
"The first link in plaintiffs' title is a transfer of land by the State to the Grand Prairie Levee District under the provision of Act 27 of 1904. That act authorized transfer of certain statement owned lands to the Grand Prairie Levee District for the purpose of assisting the district in constructing a system of levees. Act 52 of that same year (an Oyster Statute) provided in part:
`Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all the beds and bottoms of the rivers, bayous, lagoons, lakes, bays, sounds and inlets bordering on or connecting with the Gulf of Mexico, * * * shall be, continue and remain the property of the State of Louisiana, * * *. No grant, sale or conveyance of the lands forming the bottoms or beds of said bodies or streams of water, except the conditional leases and dispositions hereinafter provided for, shall hereafter be made by the Register of the State Land Office, * * *.' Act 52 of 1904.
"Thus, the 1905 conveyance, insofar as it purported to transfer land forming the bed of a navigable body of water connected with the Gulf of Mexico, was a nullity. In fact, the act authorizing the transfer (Act 27) by its own terms limits the transfer to land (see concurring opinion in Stevens, 221 So.2d 645, 650).
"The second link is a sheriff's sale dated October 29, 1910 under which (quoting from the act) ` * * * Frank C. Meyers, Sheriff of the Parish of Plaquemines, by virtue of and in obedience to, an order of sale to me directed by the Board of Commissioners for the Grand Prairie Levee District and in conformity with Act 215 of 1908 * * *' sold the property to Millard C. Baker. Even had title vested in the Grand Prairie Levee District in 1905, after passage of Act 215 of 1908, no levee district had power or authority to transfer lands to private owners; a patent had to be issued by the State of Louisiana to effect prospective sales of District lands.
"Thus it is apparent the Board of Commissioners of the Grand Prairie Levee District had no authority to direct the Sheriff of Plaquemines Parish to sell this property to a private owner after passage of Act 215 of 1908."
The appellants' ancestor-in-title allegedly acquired the property in question two years after passage of Act 215 of 1908. Such a sale to the extent that the act of sale attempted to convey property which formed the beds or bottoms of any body of water bordering on or connecting with the Gulf of Mexico, were absolute nullities.
It is admitted that the leased property is a part of the navigable water bottoms of this State.
Counsel argues that R.S. 9:5661 (Act 62 of 1912) perfected their title; that the patent authorized by Act 215 of 1908 was clearly within the contemplation of Act 62 of 1912 when that Act refers to "any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State. * * *."
The answer to this argument is that the patent issued to Millard C. Baker was an absolute nullity and no title to the property *810 vested in him by virtue of said patent. See Stevens v. State Mineral Board, La. App., 221 So.2d 645.
Finally, appellants contend the State should be estopped from claiming title after collecting taxes on the property through the years.
It is well settled that the doctrine of estoppel applies to the State just as it does to individuals. A distinction must be drawn between the irregular exercise or performance of an authorized act against which estoppel may be effective, as contrasted to the performance of an act wholly unauthorized the performance of which renders the action void and against which estoppel is inapplicable. See: State v. Register of State Land Office, 193 La. 883, 192 So. 519. Such is the fact here. The doctrine of estoppel will not breathe life into the Baker patent which is void and was void when issued.
Thus, for the foregoing reasons, the judgment appealed is affirmed at appellants' cost.
Affirmed.