JULIAN E. BAILES, Judge Pro Tern.
This litigation arises from a concursus proceeding instituted by Mississippi River Fuel Corporation and Callery Properties, Inc., filed on August 10, 1964 in Plaque-mines Parish. These two plaintiffs, who hold dual leases, one from the State Mineral Board and the other from the Carmadelles, are lessees of forty acres of land title to which emanated from the State of Louisiana. The defendants are the State Mineral Board and Louis Carmadelle, Jr. and Gus-tave Carmadelle.
The purpose of this litigation is to determine who are the legal owners of the royalties payable under the dual leases held by plaintiffs. The plaintiffs have no other interest herein. The real contest is between the State Mineral Board as one claimant and Louis Carmadelle, Jr. and Gustave Car-madelle, jointly, as the other claimants.
The companion case to the instant suit was that of Gulf Oil Corporation v. State Mineral Board, 291 So.2d 807 (La.App. 4th Cir. 1974), writs granted, 294 So.2d 831 (La. 1974), and therein ultimately the Supreme Court, in 317 So.2d 576 (La.1975), amended, and as amended, affirmed the judgment of this court. The issues presented in this instant case are identical to the issues before the court in Gulf Oil Corporation, supra.
The Carmadelles deraign their title from the State of Louisiana through the Board of Commissioners of the Grand Prairie Levee District. These claimants contend that their title to the subject property is vouchsafed against any claim of the State of Louisiana exercised through the State Mineral Board because of the statute of repose, Act 62 of 1912.
This case presents again head-on the issue of alienability or nonalienability of water bottoms by the State of Louisiana. The Carmadelles’ position is that regardless of whether the forty acres described as SW Vi of NE Vi of Section 27, Township 19 South, Range 18 East, Plaquemines Parish are navigable water bottoms, the six-year period of time for attack of their title by the State, in accordance with Act 62 of 1912, has tolled and their title is forever quieted.
In their brief, defendants argue that the question of alienation has never been considered. Their contention is that an alienation constitutes any of several different types of transactions. It includes at least a sale, a lease, a royalty sale and perhaps other similar transactions. If the court is correct in holding that the navigable water bottoms were inalienable under the theory of the public interest in the free use of those things held for the enjoyment of all, then how does one square the sale of royalties or the lease to private individuals the navigable water bottoms? Thus, they state:
“The basic difference between a sale or patent to Mr. Baker in 1911 (of the above-described property herein involved) and the mineral lease by the State to Mr. F. A. Callery in 1962 is extremely difficult to ascertain. Callery claims the right to extract minerals from beneath the bed of the submerged land. Not only does the State of Louisiana purport to give Callery a lease on the property but it also gives him the right to extract therefrom the minerals beneath the surface *1276 and to sell, use or consume them upon payment of a royalty to the lessor. It is clear that the State leased to Callery and gave him the right to extract minerals from property which had already been sold to Mr. Baker (defendant-appellants’ ancestory in title) * *
In effect, the Carmadelles argue that under the majority ruling of Gulf Oil Corporation v. State Mineral Board, supra, the State enjoys the best of both worlds. The state sold the property in 1911 for the purpose of generating revenue, then are back now selling the property again for the raising of revenue.
Appellants make the point in their brief that the court in neither California Company v. Price, 225 La. 706, 74 So.2d 1 (La.1954) (which was expressly overruled in Gulf Oil Corporation) nor Gulf Oil Corporation v. State Mineral Board, supra has expressly addressed the question of alienation.
The obvious thrust of this argument is that what was declared inalienable in one instance has been in fact alienated or declared to be alienable in the latter case.
The other side of the Goin presents a different approach. What is inalienable under Gulf Oil Corporation is the right in the public to navigate the waters secured by ownership in the State of the water bottoms and what has been alienated in the form of lease and royalty transaction is the right to search for and capture prizes. Thus is distinguished the proscribed complete transfer of all the whole right in the 1911 patents and conveyances and the mineral leases and royalty sales of the 1960’s.
The argument of the appellants is fashioned to an extent on that of (Chief) Justice Summers’ dissent, in part framed in the concept that there was no basic (constitutional) prohibition against the legislature empowering the executive department and the levee districts to dispose of the classification of property of which the subject property was a part and providing for a statute of repose; thus, after the elapse of six years, counting from 1912, the title was quieted in the appellants. (Chief) Justice Summers’ closing paragraph of the dissent in the Gulf Oil Corporation case, supra, seems apropos:
“Every contention made by the State has been analysed in this dissent and found wanting. The variety of issues presented demonstrates that the State had no confidence in the wisdom of overruling the Price Case and the many decisions applying Act 62 of 1912. In doing so the majority opinion solves nothing. To the contrary, by approving this turnabout the Court invites another Court on another day to return to the sounder and more plausible rule of the Price Case. All of which will cause the owners of property within this State to wonder about the stability of their titles.”
The appellants concede their only hope of recovery must be based and is grounded in a reversal of the last decision of the Supreme Court. We are bound by the jurisprudential terminus of Gulf Oil Corporation v. State Mineral Board, supra. At this time it is controlling of our consideration of the instant case.
For these reasons the judgment appealed is affirmed at appellants’ cost.

AFFIRMED.